UNITED STATES

v.

Specialist Four Pedro M. ROSADO, 583–90–6083, US Army, Battery C, 1st Battalion, 6th Field Artillery, 1st Cavalry Division, Fort Hood, Texas.

SPCM 11099.

U. S. Army Court of Military Review.

Sentence Adjudged 22 Nov. 1974.

Decided 27 Feb. 1976.

Appellate Counsel for the Accused: CPT R. Stuart Broom, JAGC; MAJ Richard J. Goddard, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Gay M. Holmes, JAGC; CPT William C. Kirk, JAGC; MAJ John T. Sherwood, Jr., JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

At trial by special court-martial, the appellant pleaded not guilty but contrary to his pleas was found to be guilty of possession of heroin in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 and received the sentence outlined above.

Here, as well as at trial, the appellant asserts error was committed by the military judge in failing to sustain the appellant's motion to suppress evidence produced as a result of an alleged illegal search and seizure in violation of the appellant's constitutional rights under the Fourth Amendment to the Constitution of the United States. We disagree.

The operative facts with which we are concerned are as follows:

On the evening of 8 September 1974, the appellant's battery commander, Captain W, summoned Private L to his office. Private L along with the appellant and three others shared a room in the unit's barracks. Captain W advised Private L that he suspected the appellant of being involved in selling drugs. However, Captain W did not know where the appellant kept the drugs. He requested that Private L find out where the appellant kept the drugs.

Captain W had been in command of the appellant's unit for five to six months. Following his assumption of command, he had been briefed by his executive officer concerning each man assigned to the unit. The executive officer had advised Captain W of the personnel in the unit whom he believed were involved with drugs, alcohol or AWOL. Captain W was also told the appellant always had money. In addition, the unit maintained sign-in rosters which required people who visited the members of the unit to sign in and state who they visited. These logs over a 60-day period indicated that the appellant had numerous visitors from many units on the post who normally did not stay longer than two to five minutes.

Private L, after hearing his battery commander's request, initially requested transfer from the room which he shared with the appellant and others. The record doesn't indicate whether he acquiesced to Captain W's request at the interview. However, the following evening Private L retired to bed early and while on the verge of sleep the appellant and two others entered the dark room. Private L feigned sleep and noted that appellant and his associates carried on a conversation in Spanish for a few moments then the appellant walked over to the window. Private L heard the Venetian blind move and heard a popping sound as if the end of the base of the Venetian blind had been removed. Private L could not see what the appellant did in the darkness of the room. However, the following morning, after the other occupants had departed the room, Private L removed the end plug from the base bar of the Venetian blind and examined the cavity therein. There he found a matchbox which contained eight multicolored balloons. He removed one of eight balloons and replaced the matchbox in the Venetian blind bar and delivered his find to Captain W. Captain

W opened the balloon and observed a light brown powder which he believed to be heroin. Captain W then called two other officers from his unit and proceeded to the barracks in which the appellant's room was located. Captain W knocked on the door to appellant's room then entered. Upon observing that all of the occupants were not present, he directed a Lieutenant to get the remaining occupants who were absent and return to the room. Upon their arrival, Captain W informed each man of his rights under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and asked each individual if he had any objection to having his area searched. Each man voiced no objection to the search. Captain W then advised the soldiers what he was looking for and proceeded to search the room. In the base of the Venetian blind he found the matchbox which at that time contained seven balloons containing heroin which he then turned over to an agent of the Criminal Investigation Command.

The appellant alleges as error that his Fourth Amendment rights were violated in that the military judge erred in failing to sustain the trial defense counsel's motion to suppress the evidence derived from the search and seizure by both Private L and Captain W.

■ It has long been established that the Fourth Amendment[1] prohibition against unreasonable searches and seizures applies in the military as well as in the civilian community.[2]

■ The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion.[3]

The test to be used in determining the "capacity to claim the protection of the

[Fourth Amendment]" is whether or not the particular locale is one "in which there was a reasonable expectation of freedom from governmental intrusion."[4]

Search of an individual's personal effects by government agents is authorized by the Constitution. As the Supreme Court of the United States noted, the homes and places of business are not "sanctuaries" into which the government can never reach.[5] The Constitution protects people against "unreasonable" searches. A reasonable search therefore is proper.

Here, what we are required to determine is whether the appellant had a constitutionally justifiable expectation of privacy in tangible personal property found in a common area of government-owned quarters which were assigned to the appellant as well as four other people.

■ Fourth Amendment rights are personal to the individual. The doctrine of standing only provides the substantive right to challenge at trial, the admission of the evidence on the basis of an alleged illegal search and seizure or both.

■ Private L was a lawful occupant of the room. At the time he made the intrusion into the base of the Venetian blind he was in no sense a trespasser and he had an equal right to use and benefit of the Venetian blind as against any other occupant of the room. It can clearly be said that the appellant had no reasonable expectation of privacy in the Venetian blind against Private L or any other person assigned as a lawful occupant in that room.[6]

A further point requires clarification. We must also determine if the intrusion and removal of the balloon of heroin by Private

1. United States Constitution, Amendment IV.

2. *United States v. Unrue,* 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973).

3. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

4. *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154, 1159 (1968);

see also *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

5. *Berger v. New York,* 388 U.S. 41, 63, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *United States v. Rushing,* 17 U.S.C.M.A. 298, 302, 38 C.M.R. 96, 100 (1967).

6. *See United States v. Aloyian,* 16 U.S.C.M.A. 333, 36 C.M.R. 489 (1966).

L was in fact a mere extension of Captain W's actions. Stated in another way, were the acts of Private L those of an agent acting in the employ of Captain W?[7]

The findings of fact set forth above clearly indicate that Private L's immediate reaction to Captain W's request was to seek a transfer from the room and avoid the involvement in the situation. Private L's response was not uncommon and we believe his primary motivation to comply with Captain W's request was based upon removing his own person from the investigative scene and any peripheral involvement which he could reasonably foresee.

A soldier has the right to protect himself from involvement in criminal activities of others with whom he is required to associate pursuant to the requirements of the military service. We note that he had no powers to exercise any dominion or control over the appellant from either a disciplinary or police status. Only searches by law enforcement agents and persons having direct disciplinary power over the person searched will bring the exclusionary rule of the Fourth Amendment into consideration.[8]

Accordingly, we hold that the acts of Private L were not those of a government official or agent but rather the acts of a private individual. However, even if Private L could be construed to be a government agent, his inquiry and intrusion into a common area was lawful because, as noted above, Private L had a lawful right to the use and benefit of the area at the time he made his inquiry and intrusion into the Venetian blind.

As against Captain W, the unit commander, the appellant had a reasonable expectation of privacy subject to the tests for reasonableness as set forth above, therefore, we conclude that the appellant had standing to object to the intrusion or search and subsequent seizure by Captain W.

Turning to the search conducted by Captain W, we conclude that he had probable cause to search the personal belongings of the occupants of the room.

At the time Captain W proceeded to the barracks accompanied by his junior officers he had hearsay reports concerning appellant's suspected involvement in the drug scene and his possession of a more than adequate supply of money. He was aware that the appellant had an unusually large number of visitors from other units on the post who visited him for extremely short periods of time. Finally, he had Private L's observations concerning the appellant's activity with the Venetian blind and the balloon which Private L had removed from the base of the Venetian blind. Captain W had also formed the opinion that the balloon contained heroin.

Although the occupants of the room appeared to have consented to the search of the room and their belongings, we find that Captain W had probable cause to search the room and the property located therein.

The appellant had standing to object to the introduction of the evidence seized by Captain W. However, we find the military judge was correct in overruling the appellant's objection as the search was not unreasonable under the circumstances of this case and therefore the appellant's rights under the Fourth Amendment were not violated.

The other facets of this issue which were alleged as error by appellant's counsel have been considered and are deemed to be without merit.

Accordingly, the findings and sentence are affirmed.

Senior Judge BAILEY and Judge MOUNTS concur.

---

7. Paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Fleenor,* 43 C.M.R. 974 (A.F.C.M.R. 1971); affirmed, 21 U.S.C.M.A. 174, 44 C.M.R. 228 (1972); *United States v. McClelland,* 49 C.M.R. 565 (1974).

8. *United States v. McClelland, supra.*