OPINION OF THE COURT
MILLER, Senior Judge:
Appellant was tried by a military judge sitting as a general court-martial and, contrary to his pleas, convicted of carrying a concealed weapon, an air pistol (a violation of a lawful general regulation), assault, wrongful possession of heroin, possession of marihuana in the hashish form, and wrongful possession of secobarbitol, violations of Articles 92, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 928, 934. The appellant’s sentence provides for a dishonorable discharge, confinement at hard labor for 3 years, total forfeitures, and reduction to Private E-l. On appeal several assignments of error are raised. We affirm.
I. The Search Authorization
Here, as at trial, appellant asserts error was committed by the military judge in failing to suppress a quantity of heroin, marihuana and hashish found in a search of appellant’s government quarters. Appellant attacks the lawfulness of the search on three grounds: (1) the search authorization was based on information from a United States Army Criminal Investigation Command (CID) agent who intentionally withheld material facts from the authorizing officer, Brigadier General Cromartie; (2) General Cromartie was not a “neutral and detached magistrate” as required by United States v. Ezell, 6 M.J. 307 (C.M.A.1979); and (3) the informant’s entry into the appellant’s quarters, which provided the basis for the probable cause to support the authorization to search, was itself an illegal search.
The controversy over the veracity of Special Agent (SA) McCleskey concerned the reliability of the confidential informant, Specialist Five Holmes. Holmes and the appellant were friends. On 6 September 1981, the two were involved in an incident where the appellant pulled a “BB” pistol and assaulted another soldier in an attempt to collect some money owed to the appellant. Later, the Government vehicle in which the appellant and Holmes were riding was stopped by military police, who found a pistol on the passenger seat. Marihuana was found in the appellant’s sock. SA McCleskey interviewed Holmes, who was driving the vehicle and he denied knowing anything about the marihuana found in the appellant’s sock. Holmes also denied any knowledge about the assault. McCleskey suspected that Holmes was lying to him to protect a friend.
On 18 December Holmes came to McCleskey’s office and volunteered that the preceding Monday (14 December), he had been in the appellant’s quarters and had observed a kilogram of hashish. Asked why *1026 he was now coming forward with this information, Holmes replied that the appellant had been “bad-mouthing” him about the 6 September incident, blaming him for the appellant’s apprehension. McCleskey told Holmes this information was not “timely,” but “that if he happened to go to [appellant’s] quarters again and see any illicit drugs, that he should give [him] a call or come in and see [him] in a timely manner.” Later on that same day Holmes did so and this new information became the basis for the request to search appellant’s quarters.
Authorization was provided by Brigadier General Cromartie, the Mannheim Military Community Commander and United States Army Europe Provost Marshal. General Cromartie was informed by SA McCleskey that Holmes had observed that day, in appellant’s quarters, approximately ten grams of heroin wrapped in paper packages, foil packets containing hashish, and a plastic bag containing marihuana, all located in the appellant’s bedroom. Additionally, McCleskey related the details of appellant’s involvement in the 6 September incident, the informant’s prior friendship with the appellant, and the fact that he was now seeking “revenge” because of appellant’s “badmouthing.” However, McCleskey omitted telling General Cromartie about his feelings that Holmes had lied to him about the 6 September incident.
Appellant asserts McCleskey deliberately withheld from General Cromartie McCleskey’s intuitive feelings that Holmes had lied to him about the 6 September incident, citing Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Although Franks dealt with a situation in which an allegedly “false statement” was set out in the search warrant affidavit, the reasoning of the case logically extends to material omissions since the crucial inference-drawing powers of the authorizing official are equally hindered. United States v. Dennis, 625 F.2d 782 (8th Cir. 1980); United States v. Lefkowitz, 618 F.2d 1313 (9th Cir.), cert. denied, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); United States v. Martin, 615 F.2d 318 (5th Cir. 1980). However, not every intentional omission of fact is material or objectionable.* Facts will be “material” if there is the substantial possibility that the fact if made known would have altered the authorizing official’s determination of probable cause.
Even assuming that appellant has made a sufficient preliminary showing that the omission was an intentional or reckless misrepresentation of Holmes’ reliability, we conclude the omission was not material. The information that was related to General Cromartie was firsthand, specific, and highly detailed, thus it was self-corroborating. United States v. Banks, 539 F.2d 14, 17 (9th Cir.), cert. denied 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976). As to the informant’s credibility, McCleskey disclosed the informant’s past friendship with the appellant and the revenge that the informant was now seeking. Although McCleskey did not disclose his prior inklings about the informant’s honesty concerning the 6 September incident, we think this fact insignificant when it is understood that the informant was then trying to protect appellant and himself. Had this fact been made known to General Cromartie, it .would have had no bearing on his determination that the informant was a credible witness.
Appellant also contends that the authorizing officer, General Cromartie, was disqualified to issue a search authorization because he was not a “neutral and detached magistrate.” There is no dispute that General Cromartie’s military duties were those *1027 of the senior law enforcement officer responsible to the Commanding General of United States Army, Europe, for all law enforcement activities. However, General Cromartie simultaneously discharged duties as the community commander and it was in this capacity that the search was authorized.
The conflict in a military commander’s duties was acknowledged by then Chief Judge Fletcher in United States v. Ezell, 6 M.J. 307 (C.M.A.1979):
I believe it unnecessary as well as increasingly in contradiction of common sense to equate the military commander in his duty to produce an effective fighting force and his concomitant responsibility as the chief law enforcement official on a military installation to a neutral and detached magistrate within the meaning of judge or magistrate in the civilian society. Such a legal fiction is counterproductive in assessing the realities of everyday military life and provides no viable standard for a determination of reasonableness under the Fourth Amendment.
Id. at 328. The test for disqualification is whether the authorizing officer’s neutrality has been totally compromised by his involvement in a particular investigation. United States v. Stuckey, 10 M.J. 347, 358-359 (C.M.A.1981); United States v. Wallace, 14 M.J. 1019 (A.C.M.R.1983). There is no such evidence here. We find the assignment of error without merit.
Finally, appellant contends that McCleskey’s “exhortations” to Holmes to find fresh information “converted the informant into a government agent, and thus Holmes’ action in gaining entrance into the appellant’s quarters under the subterfuge at [sic] must be deemed a violation of the appellant’s Fourth Amendment right to be free from unreasonable searches.” We disagree. McCleskey’s advice to Holmes was “that if he happened to go to Kelly’s quarters again and see any illicit drugs, that he should give [McCleskey] a call or come in a see [him] in a timely manner.” By no stretch of the imagination can it be said that Holmes was thereby made a government agent. United States v. Rosado, 2 M.J. 763, 765-766 (A.C.M.R.1976).
II. Double Jeopardy
Initially, the appellant was arraigned before a special court-martial on charges alleging concealment of a weapon (air pistol), assault, and possession of marihuana (Charges I, III and IY). At that time the appellant was represented by detailed military counsel although indicating his desire to be represented by individually retained civilian counsel. He, therefore, reserved his pleas and the selection of forum. Because a government witness, Sergeant (SGT) Guerette, was due to leave the Army before the scheduled trial date, Government counsel requested that SGT Guerette be examined to preserve his testimony. The military judge held that the court should at least “determine his materiality and know what he has to say.” SGT Guerette was then called and examined by both parties. Subsequent to this testimony but prior to the trial date, the appellant was involved in subsequent misconduct which resulted in the referral of all charges to a general court-martial.
Appellant now contends that he was “improperly retried as to the specifications of Charges I, III and IV inasmuch as former jeopardy barred such a retrial.” The short and simple answer to this claim is that the prior proceeding was not “jeopardy” for the purposes of either Article 44, UCMJ, 10 U.S.C. § 844, or the double jeopardy provisions of the Fifth Amendment to the United States Constitution. See United States v. Cook, 12 M.J. 448 (C.M.A.1982). The pretrial hearing was not intended to, nor considered by the parties, as putting the accused to the test of defending himself on the issue of his guilt or innocence.
III. The Prior Recorded Testimony
At trial, the Government averred that it was unable to locate SGT Guerette and therefore offered the prior recorded testimony of Guerette as previously recorded testimony under Mil.R.Evid. 804(b)(1). The *1028 military judge held the testimony did not meet the requirements of former testimony “because there was not an opportunity to cross-examine for a similar motive or purpose shown, and, additionally, there has not been a sufficient showing of nonavailability of the witness.” However, the military judge held the testimony was admissible under Mil.R.Evid. 803(24). On appeal appellant focuses on the admissibility of the recorded testimony under Rule 803(24). We need not reach that issue since we conclude the evidence was admissible under Mil.R. Evid. 804(b)(1).
The principal guarantee of reliability in cases of prior testimony is that the witness has been cross-examined for a similar purpose. When this condition and the requirement of an oath are met, the nomenclature affixed to the prior hearing is immaterial. United States v. Poland, 659 F.2d 884 (9th Cir.1981); United States v. Zurosky, 614 F.2d 779 (1st Cir.1979), cert. denied, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980); United States ex rel. Oliver v. Rundle, 417 F.2d 305 (3d Cir.1969). SGT Guerette’s statement given at the pretrial hearing was given under similar circumstances closely approximating those that would have surrounded the actual trial. The parties were identical with the exception that appellant was represented at the pretrial hearing by detailed military counsel while at his trial he was represented by civilian counsel. Representation by the same counsel at the prior hearing is not required. United States v. Amaya, 533 F.2d 188 (5th Cir.1976), cert, denied, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). Counsel’s questioning clearly partook of cross-examination as a matter of form. His examination was replete with leading questions, the hallmark of cross-examination. Counsel’s questioning also comported with the purpose of cross-examination, that of challenging whether the declarant accurately perceived and recalled the events he testified to. Counsel attempted to establish that SGT Guerette’s discovery of the weapon could have just as easily been attributed to the driver of the vehicle as the appellant. To this end counsel elicited the important facts that it was the driver who admitted the weapon was in the vehicle and that although appellant was sitting in the passenger seat, Guerette found the pistol on the seat underneath a jacket. This latter fact suggested that someone placed the weapon on the seat after the appellant departed the vehicle.
We also conclude that the witness was “unavailable” within the meaning of 804(a). The Government attempted to locate the witness telephonieally through his parents in Maine who stated that he had left the state for southern Missouri leaving no forwarding address or method of contact. Additionally, the Government sought the assistance of the State Patrol in southern Missouri because Guerette had indicated that he was applying to them for a job. This was also to no avail. We find that the Government’s efforts were diligent and conclude that it was not possible to obtain the witness’s testimony by personal appearance.
The remaining assignment of error is without merit.
The findings of guilty and the sentence are affirmed.
Chief Judge HANSEN and Judge BADAMI concur.

 Often confidential informants have past dealings of a criminal nature, not every detail of which is necessary to place the authorizing official on notice of their potential unreliability. Caution should be exercised by the government agent in seeking search authorization. If particular facts are known which bear adversely on an informant’s accuracy in a particular case, then those facts must be disclosed. For example, if the informant bears a grudge against the suspect or is seeking to mitigate his own criminal liability, evidence on those issues should be disclosed. Additionally, if the informant’s statements are contradicted by other independent facts known to the government, those facts should be revealed.