UNITED STATES, Appellee,

v.

Colonel Edward L. MODESTO, 311–46–4667, United States Army, Appellant.

ACMR 9002861.

U.S. Army Court of Military Review.

10 May 1994.

For Appellant: Michael J. Duncan (argued); Captain Michael Huber, JAGC (on brief); Captain Blair M. Jacobs, JAGC.

For Appellee: Captain Gregory T. Baldwin, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major James L. Pohl, JAGC (on brief); Major Timothy W. Lucas, JAGC.

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Senior Judge:

Contrary to his pleas, a general court-martial consisting of members convicted Colonel (COL) Modesto of eight specifications of conduct unbecoming an officer and a gentleman, in violation of Article 133, Uniform Code of Military Justice, 10 U.S.C. § 933 (1988) [hereinafter UCMJ]. He was sentenced to dismissal, confinement for 9 months, and forfeiture of $3000.00 pay per month for 9 months. The convening authority approved the adjudged sentence.

### I. Background

The appellant, a doctor and an officer in the Dental Corps with seventeen years of service, was convicted of conduct unbecoming an officer by, inter alia, committing sodomy, engaging in mutual masturbation, indecently touching another male, cross-dressing in public, performing as a female impersonator in a night club, and being photographed imitating fellatio with two other men.

The case arose after a number of indecent exposure incidents in the Colorado Springs, Colorado, area. In the incidents, a male, dressed in female clothing, exposed himself to females. Through the identification of the appellant's vehicle and his identification by two of the victims, he became a suspect in the indecent exposure incidents.[1] Based on the identifications and on information from an informant, agents of the Criminal Investi-

---

1. The appellant was charged with two specifications of indecent exposure but was acquitted of these offenses at his court-martial.

gation Command (CID) began covert surveillance of the appellant at the Hide'n Seek Club, a gay club he frequented in Colorado Springs. The investigation led to information that there existed a homosexual "marriage" between the appellant and the man who shared his off-post house in Colorado Springs, and that on several occasions, the appellant had performed as a female impersonator at the Hide'n Seek Club. Based on this information, CID investigators, working with local police, obtained a search warrant from a federal magistrate to search the appellant's off-post house. During the search, photographs and other evidence of the appellant's participation in homosexual acts were seized. That evidence led to the appellant's court-martial for criminal conduct between August 1988 and March 1990, and to his conviction on 25 October 1990.

After his conviction, the appellant asked the convening authority to defer the adjudged sentence to confinement. The convening authority denied the request for deferment. On 16 November 1990, the appellant filed a petition for a writ of habeas corpus with this court, seeking his release from confinement. This court denied the petition. *Modesto v. United States*, ACMR MISC 9003020 (A.C.M.R. 21 Nov. 1990) (unpub.). The appellant appealed this court's denial of his writ petition to the United States Court of Military Appeals, and on 7 February 1991, that court denied his writ-appeal petition. *United States v. Modesto*, 32 M.J. 374 (C.M.A.1991) (summary disposition). On 26 December 1990, after his transfer to the United States Disciplinary Barracks, Fort Leavenworth, Kansas, the appellant submitted a new request for deferment of confinement to the Commander, United States Army Combined Arms Command and Fort Leavenworth. That convening authority denied his request on 10 January 1991, and again denied the request on 18 January 1991 after the appellant filed a request for reconsideration on 15 January 1991.

In April 1991, the convening authority ordered a post-trial hearing pursuant to Article 39(a), UCMJ, to litigate an allegation of unlawful command influence raised after trial by the appellant against the Dental Activity (DENTAC) commander. The military judge, after hearing evidence on the allegation, found no evidence of unlawful command influence.

The convening authority took action in the case on 22 May 1991. On 29 January 1992, the appellant filed a Petition for a New Trial with this court based on newly discovered evidence that one of the court members had once dressed as a female for a Halloween party in Korea and also based on fraud on the court. This court denied his petition for a new trial. *Modesto v. United States*, ACMR MISC 9002861 (A.C.M.R. 16 Mar. 1992) (order) (unpub.).

The record is now before this court for review pursuant to Article 66, UCMJ. This court heard oral argument in this case on 9 February 1994. The appellant raises numerous challenges to his conviction, only two of which merit discussion:

THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS CERTAIN EVIDENCE SEIZED UNDER AN OVERBROAD SEARCH WARRANT IN VIOLATION OF THE FOURTH AMENDMENT.

THE EVIDENCE IS INSUFFICIENT TO CONVICT APPELLANT OF CONDUCT UNBECOMING AN OFFICER [SPECIFICATIONS 5 AND 9 OF CHARGE I (BY CROSS–DRESSING AND PERFORMING AS A FEMALE IMPERSONATOR)].

We resolve both of these issues against the appellant.

## II. The Lawfulness of the Search Warrant.

### A. Facts

Following the police investigation of the appellant's activities, CID agents at Fort Carson applied for and received a search warrant from a United States magistrate to search the appellant's home in Colorado Springs. The detailed three-and-a-half page, single-spaced, typewritten affidavit presented to the magistrate outlined the conduct of the investigation, the statements and actions of the appellant as observed by the police and by the informant, the background of the informant, and promises made to him. It also

described with specificity the suspected violations of 10 U.S.C. § 933—that is, conduct unbecoming an officer in violation of Article 133, UCMJ—and detailed the verifications made to insure that all of the information presented therein was accurate.

After reviewing the affidavit, the federal magistrate was "satisfied that there is probable cause to believe that the matters mentioned in the affidavit are true and correct, that the offense set forth therein has been committed, and that the property to be seized is located at the place to be searched ..." The magistrate issued a warrant to search the appellant's house (listed by street address) during the "daytime" and to search "any other building, structure, or vehicle on the premises." He further specified that "[t]the property shall be searched within 72 hours and the warrant returned to me within 24 hours thereafter."

The warrant authorized the police to search for and to seize "female clothing, wigs, emerald earrings and other jewelry, and makeup, and all other evidence which may prove that Colonel Edward Modesto has or is engaged in a criminal relationship with another male on the premises, to include photographing the premises."

In the subsequent search, approximately 146 letters, photographs, and other materials were seized, and the premises were videotaped during the course of the search. Numerous charges resulted from the search, based primarily on seized photographs of the appellant in compromising poses with his male lover and on other photographs showing him in compromising poses with other males.

The legality of the seizures was fully litigated at trial, and the military judge made findings of fact and conclusions of law. The military judge found that probable cause existed to search the appellant's house, that the warrant coupled with the attached affidavit was not overbroad and not misunderstood by the police who executed the warrant, and

that the search was generally reasonable. The military judge denied the motion to suppress most of the items seized, but did grant the motion regarding some of the items seized in the later stages of the search.[2]

Before this court, in his brief and in oral argument, the appellant renews his assertion that the warrant was unconstitutionally overbroad and therefore officers executing the search warrant lacked probable cause to seize the photos depicting homosexual activity. He points to the catch-all provision in the warrant which permitted seizure of any other evidence of a "criminal relationship with another male on the premises...." He argues that this provision excludes virtually nothing. The government disputes this contention.

The issue presented to us in this case involves the military judge's ruling regarding the constitutional requirement of particularity of a search warrant as to the things to be seized in a search.

### B. Law

The Fourth Amendment to the U.S. Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized.

"It has long been established that the Fourth Amendment prohibition against unreasonable searches and seizures applies in the military...." *United States v. Rosado,* 2 M.J. 763, 765 (A.C.M.R.1976) (footnote omitted) (citing *United States v. Unrue,* 22 U.S.C.M.A. 466, 47 C.M.R. 556, 1973 WL 14783 (1973)). *See also United States v. Ezell,* 6 M.J. 307 (C.M.A.1979). Normally, probable cause determinations involving searches of military members or their prop-

---

**2.** The search began late in the day. As the search dragged on, it became evident to the police that the magistrate's order to search only during the daytime would be violated, so the police changed their procedures, speeded up the process, and began seizing letters and other materials in a wholesale fashion for later examination. It was the products of this "wholesale seizure" that the military judge suppressed.

erty are made by commanders, military judges, or military magistrates. *See generally* Military Rule of Evidence 315 [hereinafter Mil.R.Evid. 315]. However, search warrants issued by state and federal civilian magistrates and executed by military criminal investigators are specifically recognized in military law. Mil.R.Evid. 315(b)(2) and (h)(4). When a federal magistrate issues a search warrant upon the affidavit of a police official, he must comply with both the Fourth Amendment and Federal Rule of Criminal Procedure 41 [hereinafter FRCrP 41]. When a search warrant is issued by a federal magistrate, FRCrP 41 has six requirements regarding the search warrant itself. The search warrant must:

(1) name or describe the person or the place to be searched; (2) name or describe the property to be seized; (3) be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States; (4) command the officer to search, within a specified period of time not to exceed 10 days, the person or place named or the property or person specified; (5) contain an appropriate provision authorizing execution at times other than during the day, if it is to be executed at such other times, and if reasonable cause is shown for nondaytime service; and, (6) designate a federal magistrate to whom it will be returned.

8 Federal Procedure, Lawyers Edition § 22:161 (1992) (summarizing the requirements of FRCrP 41) [hereinafter Fed.Proc., L.Ed.].[3]

■ As a general proposition, warrants issued by a magistrate are entitled to great deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983) (citing *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969)); *United States v. Lopez*, 35 M.J. 35, 52 (C.M.A.1992) (Cox, J., concurring). *See generally* 2 Steven Alan Childress and Martha S. Davis, Federal Standards of Review §§ 11.11 and 11.12 (1992). A police officer's reliance on a warrant issued by a magistrate must be objectively reasonable, and searches pursuant to a warrant "will rarely require any deep inquiry into reasonableness." *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984); *Gates*, 462 U.S. at 267, 103 S.Ct. at 2347 (White, J., concurring). Nevertheless a search warrant may be invalidated for lack of specificity. Amendment IV; *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990); 8 Fed.Proc., L.Ed. § 22:166 (collecting cases).

■ A warrant will not necessarily be invalidated as overbroad by addition of a phrase permitting seizure of "any other property that constitutes evidence of the commission of a crime" as described in a particular section of the United States Code. *United States v. Lamport*, 787 F.2d 474 (10th Cir., 1986), *cert. denied*, 479 U.S. 846, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986). When such phrases are used, they are valid if it is clear to the executing officials that the warrant does not authorize the seizure of items different in nature than the items particularly described in the warrant. *Id.*

■ If during the conduct of a lawful search, a police officer discovers items not specifically described in the warrant, he may seize those items which disclose that another crime is being or has been committed. *United States v. Eisner*, 297 F.2d 595 (6th Cir., 1962), *cert. denied*, 369 U.S. 859, 82 S.Ct. 947, 8 L.Ed.2d 17 (1962). Other cases applying this rule are *Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); *Zap v. United States*, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946); *United States v. Howell*, 240 F.2d 149 (3rd Cir.1956); *Bennett v. United States*, 145 F.2d 270 (C.C.A.4, 1944); *United States v. Old Dominion Warehouse*, 10 F.2d 736 (C.C.A.2, 1926). *See also United States v. Holzman*, 871 F.2d 1496 (9th Cir. 1989).

---

3. FRCrP Rule 41 also requires that a warrant be executed before 10:00 PM, unless authorization for a nighttime search is received. A search begun before 10:00 PM may normally continue to completion after 10:00 PM. 8 Fed.Proc., L.Ed. § 22:180 (collecting cases). This latter rule was apparently not known to the agents executing the search in this case.

## C. Decision

■ Having reviewed the wording of the warrant and of the affidavit supporting it, we find that the warrant clearly limits police officers executing the warrant to searching for and seizing items involved in certain specified criminal activity; that is, evidence of a homosexual "marriage" and evidence of the cross-dressing occurring at the Hide'n Seek Club.[4] In other words, the warrant cannot reasonably be construed as permitting a general search. We hold that the warrant was not unconstitutionally overbroad.

■ Finally, we note that some of the photographs seized during the search, depicting the appellant in compromising sexual poses with men *other than* his male lover, are outside the four corners of the evidence permitted to be seized in the warrant. Nevertheless, these items were validly seized because they were evidence of other crimes discovered by police officers during a valid search.

## III. Sufficiency of the Evidence

The appellant argues that the acts described in all six specifications of Charge I are neither indecent nor conduct unbecoming an officer, and that the government failed to prove that they were.[5] We disagree as to all specifications, and write only regarding the two specifications alleging cross-dressing.[6]

The appellant's lover testified by deposition that he met the appellant in Richmond, Virginia, in July 1987 and entered into a sexual relationship with him. On at least one occasion, the appellant visited gay bars in the Richmond area dressed as a woman and allowed himself to be photographed in drag, which photograph was entered into evidence. They began to live together after the appellant's reassignment to Colorado in September 1988. They frequented the Hide'n Seek Club, where the appellant performed on two or three occasions in female clothing. The undisputed evidence at trial showed that the appellant wore female clothing and danced at the Hide'n Seek Club during "drag queen" shows. One witness described a typical show as follows:

> It was about one o'clock [AM] when they actually performed—they got on stage. What it consisted of was men dressed in female attire, with the wigs, the dresses, the earrings. They would get on stage and lip sinc to music and they would walk up and down the stage and just go ahead [and] lip sinc to the music that was playing. And patrons in the bar would approach these men and give them money.

Some of the performances, according to several witnesses at trial, were intended to raise money for charity, and none contained suggestive or lascivious gestures, stripping, or provocative language.

In order to convict an accused of conduct unbecoming an officer under Article 133, UCMJ, the government must prove beyond a reasonable doubt the following elements:

(1) That the accused did or omitted to do certain acts; and

(2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

Manual for Courts–Martial, United States, 1984, Part IV, para. 59b(1) and (2) [hereinafter MCM, 1984].

---

4. Subsequent testimony at the court-martial revealed that when the appellant performed at the Hide'n Seek Club in female attire, he used attire provided by and kept at the club. This additional information was either not known or not presented to the magistrate by police seeking the search warrant. Given the information known to him, it was not error for the magistrate to permit a search for the wigs and women's clothing at the appellant's residence.

5. He cites the private nature of the activity depicted in the photographs and describes some of the activity depicted therein as merely "a boisterous joke."

6. The specifications in question are as follows:

SPECIFICATION 5: In that Colonel Edward L. Modesto, on active duty now and at the time of the offense charged, did, at Colorado Springs, Colorado, on divers occasions between on or about 22 September 1988 and 25 March 1990, wrongfully dress as a female and perform as a female impersonator at a club known as the Hide'n Seek, such conduct being unbecoming an officer.

SPECIFICATION 9: In that Colonel Edward L. Modesto, on active duty now and at the time of the offense charged, did, at or near Richmond, Virginia, between on or about 26 August 1988 and 22 September 1988, wrongfully dress as a female and hold himself out as a female at a public place, such conduct being unbecoming an officer.

Conduct violative of this article is action or behavior in an official capacity which, in dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity which, in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer.... This article prohibits conduct by a commissioned officer ... which, taking all the circumstances into consideration, is thus compromising.

*Id.,* para. 59c.

■ Even conduct of a private or unofficial nature by an officer may be prohibited if that conduct compromised the person's standing as an officer and "brought scandal or reproach upon the service." *United States v. Hartwig,* 39 M.J. 125 (C.M.A.1994) (quoting *Smith v. Whitney,* 116 U.S. 167, 185, 6 S.Ct. 570, 580, 29 L.Ed. 601 (1886)). In order for an officer to be on notice that his or her acts or omissions constituted "conduct unbecoming an officer" we use a "reasonable officer" standard. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Hartwig,* 39 M.J. at 130; *United States v. Frazier,* 34 M.J. 194, 198–99 (C.M.A.1992).

■ Before this court, the appellant cites some language in *United States v. Guerrero,* 33 M.J. 295 (C.M.A.1991), regarding the noncriminal nature of some cross-dressing, to say that his off-post, off-duty cross-dressing wasn't proved by the government to be a crime.

*Guerrero* involved violations of Article 134, UCMJ, proscribing conduct that is service-discrediting or is conduct prejudicial to good order and discipline in the armed forces. In *Guerrero,* the Court of Military Appeals held that cross-dressing per se is not a crime. Rather, it is the time, place, circumstances, and purpose of the cross-dressing, taken together, which must be considered. *Id.,* 33 M.J. at 298. We believe that this test is equally applicable to cross-dressing offenses by officers alleged under Article 133, UCMJ.

Finally, in order to affirm the appellant's conviction of each offense, we must find that the evidence is both legally and factually sufficient. UCMJ art. 66(c). The test we must utilize for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all of the essential elements of each offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The test for factual sufficiency which we must use in carrying out our unique duty as fact finder under Article 66(c), UCMJ, is whether, after weighing the evidence in the record of trial and having made allowances for not personally observing the witnesses, we are ourselves convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

Having considered the time, place, circumstances, and purpose of the appellant's cross-dressing, as described in the evidence of record, we are convinced that the evidence is sufficient both legally and factually to prove criminal conduct and to show conduct unbecoming an officer. We find that any reasonable officer would have no doubt that his conduct in cross-dressing under the circumstances as presented in the evidence of record was conduct unbecoming an officer.

Assuming without deciding that cross-dressing in a public place has First Amendment implications, we have no doubt that the conduct presented a "clear and present danger" that the conduct, "in dishonoring or disgracing the officer personally, [would] seriously compromise[ ] the person's standing as an officer." MCM, 1984, Part IV, para. 59c(2). *See also Hartwig,* 39 M.J. at 130.

We have reviewed the remaining assertions of error, including those personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find no merit in them.

The findings of guilty and the sentence are affirmed.

Judge JOHNSTON and Judge BAKER concur.