OPINION OP THE COURT
PEARSON, Senior Judge:
Court members convicted appellant of carnal knowledge for having sexual intercourse with 14-year-old Geraldine, committing indecent acts by putting his penis in her mouth, providing alcohol to her and two other minor females, and obstructing justice by asking two witnesses to lie to investigators. Articles 120, 134, UCMJ, 10 U.S.C. §§ 920, 934. The members sentenced him to a bad-conduct discharge, 18 months confinement, forfeiture of $615 pay per month for 18 months, and reduction to E-l, which the convening authority approved.
Appellant contends we must reverse some of his convictions because they were based on illegally seized evidence, the military judge erred by taking judicial notice that jurisdiction existed over the alcohol offenses, the evidence is factually insufficient to prove intercourse with Geraldine, and he was prejudiced by an instructional error. We conclude otherwise and affirm.
FACTS
Appellant, a 28-year-old single airman first class, met Geraldine and her 14-year-old friend Cynthia at the Dyess Air Force Base gym. Enticed by appellant’s sporty car, the two girls agreed to go riding around base with him. When appellant asked their ages, both lied, with Geraldine replying “15” and Cynthia replying “16.” Apparently concerned that he might appear too old for the girls, appellant told them that he was only “21.”
After riding around a bit, appellant detoured by his dormitory room where he picked-up a bottle of rum which he shared with the two girls. Ultimately, the trio returned to appellant’s room where appellant focused his attention on Geraldine. He escorted her to his bathroom where, according to Geraldine, he asked her if she wanted to “have sex with him.” She declined, but agreed to perform fellatio upon him. Shortly thereafter, Cynthia opened the closed bathroom door and saw appellant “with his pants down and his underwear down” and Geraldine on her knees.
Appellant and the two girls left and went to the base recreation center where appellant introduced them to another airman, Tony Moore, with the idea that Moore would pair-up with Cynthia. The four returned to appellant’s dormitory room, and the couples paired-off as planned.
*746 Once more, appellant escorted Geraldine to the bathroom where she disrobed. Geraldine testified she once again performed fellatio upon appellant, after which, he picked her up and, while resting her against the wall, inserted his penis briefly into her vagina. The interlude ended when Airman Moore knocked on the door. Airman Moore testified appellant told him “he was doing it” with Geraldine when Moore interrupted them.
Several months later, the two girls reported their activities with appellant to agents of the Air Force Office of Special Investigations (AFOSI). The girls added that while in the dormitory room, appellant had taken their photograph and shown them photos of girls “depicted nude and in skimpy clothing.” According to Geraldine, appellant bragged about being with “a lot of girls.” The girls also said they exchanged telephone numbers with appellant, and that appellant had called Cynthia several times.
On May 10, 1993, the agents interviewed appellant about the girls’ allegations and asked him to consent to a search of his dormitory room, which had changed since the incident due to a move. Appellant admitted calling Cynthia once but otherwise denied the allegations and refused to consent to a search. The agents obtained an oral search authorization for appellant’s room from the installation’s military magistrate to look for photographs of young girls and evidence of the telephone numbers.
During the search, the agents found photographs consistent with those the girls had described and discovered a small notebook containing names and telephone numbers. The agents did not seize the book, but wrote down female sounding names with accompanying telephone numbers. Later, the agents called the list of females and discovered that two, Wendy and Elizabeth, had information relevant to the case. Wendy and Elizabeth stated appellant provided alcohol to them while they were underage (only the offense with Wendy was charged) and had tried’to persuade them to make false statements to investigators concerning their relationship with appellant (both charged).
LAWFULNESS OF DORMITORY SEARCH
Appellant contends, as he did at trial, that the search of his dormitory room was not supported by probable cause as the information was stale, was overbroad to the extent the agents seized information from the notebook, and was not authorized by competent authority. Appellant also argues the search was not saved by the good faith exception outlined in Military Rule of Evidence 311(e)(1). The military judge made extensive findings of fact resolving these issues against appellant.

Standard of Review

We review a military judge’s ruling denying a motion to suppress evidence under an abuse of discretion standard. United States v. Maxwell, 42 M.J. 568, 575 (A.F.Ct. Crim.App.1995). Usually, we accept a military judge’s findings of fact on search related issues unless they are unsupported by the evidence of record or are clearly erroneous. Where the military judge’s findings are silent or clearly erroneous, we may exercise our statutory discretion under 10 United States Code Section 866(c) and find the facts ourselves. United States v. Neal, 41 M.J. 855 (A.F.Ct.Crim.App.1994).

Probable Cause Ruling

The judge’s finding that probable cause existed for the search of appellant’s room for both photographs and telephone numbers is not clearly erroneous. Probable cause exists when there is a reasonable belief that the property sought is located in the place to be searched. Mil.R.Evid. 315(f)(2). In determining whether probable cause exists, the authorizing official must look at the “totality of the circumstances.” United States v. Lopez, 35 M.J. 35, 38 (C.M.A.1992) (citations omitted).
The timeliness of the information supporting the search is one factor in the totality of circumstances equation. At some point, probable cause evaporates due to the passage of time between the events on which the probable cause is based and the search. In effect, the information becomes too stale because there is no longer a reasonable belief *747 that the property is still present in the location to be searched. Whether the information supporting probable cause is stale depends on at least four factors: (1) the nature of the article sought; (2) the location involved; (3) the type of crime; and (4) the length of time the crime has continued. Id. at 38-39.
Here, almost 3 1/2 months (judge erroneously calculated 4 1/2 months) elapsed between the events Geraldine and Cynthia described and the search of appellant’s dormitory room, a significant length of time. However, the information was not stale when analyzed in light of the above factors.
First the articles sought, photographs and telephone numbers, were not necessarily incriminating in themselves; were not consumable over time, like drugs; and were of a nature that they would be kept indefinitely. In this regard, a reasonable person would conclude that appellant moved all of his personal papers, like photographs and telephone numbers, to his new residence in the dormitory, particularly when they related to romantic relationships. Finally, while the crime was not of a continuing nature, appellant admitted he maintained telephone contact with at least one of the girls after the events in the room. Consequently, under the totality of the circumstances, the magistrate had sufficient information to reasonably believe the evidence was still located in appellant’s room.
Since the information supporting the search was not stale, the agents could lawfully search the room for any objects that could reasonably contain the items sought, which brings us to overbreadth.

Overbreadth of Search

A search authorization conveys the authority to search “a person or an area for specified property or evidence or for a specific person and to seize such property, evidence, or person.” Mil.R.Evid. 315(b)(1) (emphasis added); U.S. Const, amend. IV (search warrant must “particularly describ[e] ... the things to be seized”).
A search authorization does not convey upon the searcher the power to conduct a general exploratory search for evidence unrelated to the items specified in the authorization. United States v. Modesto, 39 M.J. 1055, 1059 (A.C.M.R.1994), aff'd, 43 M.J. 315 (1995); see United States v. Hartsook, 15 U.S.C.M.A 291, 35 C.M.R. 263, 1965 WL 4662 (1965). However, a police officer armed with a search authorization may seize other items discovered in plain view during the authorized search, if the officer (1) is acting within the scope of the authorization and (2) has probable cause to believe the item is contraband or evidence of a crime. See Mil.R.Evid. 316(d)(4)(C); Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Modesto, 39 M.J. at 1059.
While the military judge failed to make precise findings on the plain view and overbreadth aspects of the issue, we conclude the AFOSI agents properly wrote down the names and telephone numbers of the other females. Article 66(c), UCMJ. When the agents opened a carrying case and discovered the notebook, they had not yet found Geraldine’s or Cynthia’s telephone numbers and were still searching for photos depicting young girls. Thus, they were still operating within the scope of the authorization. Based upon appellant’s comments about being with “a lot of girls,” we conclude the agents had probable cause to believe the names of other females and their telephone numbers would provide evidence relevant to the offenses under investigation. Article 66(c), UCMJ.

Competent Search Authority

Background

A “competent military authority” must authorize the search authorization. A military magistrate qualifies as such an authority when authorized by service regulation. Mil.R.Evid. 315(b)(1), (d)(2).
At the time of the search, an Air Force regulation provided that an installation commander with general or special court-martial jurisdiction could appoint a primary and alternate military magistrate for the installation. Air Force Regulation 111-1, Military Justice Guide, ¶ 1-8 (Sep. 30,1988) (Interim Message Change 92-1). Per the regulation, the alternate “should only act” when the *748 primary was “unavailable due to absence or incapacitation.” However, the regulation specifically stated “an authorization by the alternate magistrate [would] not be rendered invalid solely on the basis that the primary magistrate was, in fact, available.” Id. at Hl-Sa.
The Dyess installation commander appointed a primary and alternate military magistrate as outlined in the regulation, including the direction that the alternate should only act when the primary was truly “unavailable.” On the day of the search, the agents telephoned the primary. However, both he and the alternate were off base at a barbershop. The agents paged the primary on his beeper, and the alternate returned the page since the primary was getting a haircut. Although the alternate dealt with the agents, the agents believed the alternate was briefing the primary who would authorize the search. After the search, the agents even had the primary sign the follow-up documentation reducing the authorization to writing. However, the alternate in fact authorized the search and did not fully brief the primary on the information the agents provided until after granting them the authority to search. Discussion
The military judge found that the primary military magistrate was not “unavailable” when the alternate authorized the search of appellant’s dormitory room. However, the military judge concluded that the implementing service regulation did not establish its own exclusionary rule when “all the ‘T’s,’ if you will, weren’t crossed and the T’s’ weren’t dotted.” The judge concluded that “everyone was acting in an appropriate capacity attempting to do their jobs properly and appropriately.”
We agree with the trial judge. Moreover, we hold a properly designated alternate military magistrate may authorize a lawful search even if the primary military magistrate is available unless the implementing service regulation expressly creates an exclusionary rule to the contrary. This regulation did not. See United States v. Law, 17 M.J. 229, 240 (C.M.A.1984). See also United States v. Foust, 17 M.J. 85 (C.M.A.1983).

Good Faith

Even if the search authorization were flawed, the fruits of the search would still be admissible under the good faith doctrine if (1) the alternate military magistrate had a substantial basis for determining probable cause existed, and (2) the agents seeking and executing it, reasonably and with good faith, relied on the authorization in conducting the search, with good faith measured by an objective standard. Mil.R.Evid. 311(b)(3).
We agree with the military judge that the good faith doctrine applies in this case. First, the alternate military magistrate was a competent military authority to authorize the search. Second, as we have already discussed, ample probable cause existed for the search of appellant’s dormitory room for the items authorized. Third, the agents seeking and executing the authorization actually believed that the primary military magistrate authorized the search instead of the alternate. See United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); United States v. Maxwell, 42 M.J. 568, 578-579 (A.F.Ct.Crim.App. 1995) and cases cited therein. Thus the fruits of the search were lawfully obtained.
JURISDICTION
The providing alcohol to minors offenses were based on a Texas statute assimilated as federal penal law under the Federal Assimilated Crimes Act, 18 United States Code Section 13. To convict an accused of an assimilated crime, the government must prove, beyond a reasonable doubt, that the act occurred in an area of exclusive or concurrent federal jurisdiction (assimilated jurisdiction). See Manual for Courts-Martial, United States, Part IV ¶ 60c(4) (1984); United States v. Dallman, 34 M.J. 274 (C.M.A.1992); United States v. Williams, 17 M.J. 207 (C.M.A.1984). Appellant claims, for the first time, that this evidence is lacking. We disagree.

Background

The specifications pled that appellant provided alcohol at “Dyess Air Force Base, Texas, a place under exclusive or concurrent *749 Federal jurisdiction.” The prosecutor asked the military judge “to take judicial notice of the fact that Dyess Air Force Base is a place of concurrent jurisdiction,” and offered a certified copy of the deed to the land where the offenses were alleged to have occurred, appellant’s dormitory room and the base enlisted club.
The military judge asked defense counsel if he intended to contest “the jurisdictional basis for the charges being violations of state law,” meaning we assume, the jurisdictional status of the installation. Counsel replied, “No, your honor. We have reviewed those documents and the case law and we have no issue to raise with regard to that.” The military judge then attached the deed as an appellate exhibit and took judicial notice as requested. See Mil.R.Evid. 201.
Before instructing the members on findings, the judge once again addressed the jurisdictional status of the installation. The judge asked defense counsel, if he “agree[d] that all of Dyess Air Force Base, Texas, at the time alleged in these offenses was a place of concurrent federal jurisdiction.” Defense counsel replied, “Defense agrees.” The military judge then instructed the members, without objection, that she had taken judicial notice that Dyess “was a place under concurrent federal jurisdiction” as outlined in Military Rule of Evidence 201(g).

Discussion

Here, we are not dealing with an issue of jurisdiction over the offense. See R.C.M. 203; Williams, 17 M.J. at 215-16 (affirming conviction under other clauses of Article 134, UCMJ, even when assimilated jurisdiction not pled or proven at trial). Instead, we are concerned with the method of proving “an adjudicative fact essential to establishing an element of the case.” Mil.R.Evid. 201(c).
Judicial notice of a fact serves as a substitute for testimony or other evidence which could be offered to prove the fact. Stephen A. Saltzburg et al., Military Rules of Evidence Manual 78 (3d ed.1991). A trial judge may take judicial notice under Military Rule of Evidence 201 of the jurisdictional status of the place where an assimilated offense allegedly occurred, even though such status is a factual element of the offense. Mil.R.Evid. 201(c); see United States v. Irvin, 21 M.J. 184, 187 (C.M.A.1986); cf. Williams (propriety of taking judicial notice of assimilated jurisdiction on appeal).
Of course, a party has a right to be heard on the propriety of taking judicial notice if the party requests it. Mil.R.Evid. 201(e). However, appellant decided not to exercise that option.
We conclude an accused may knowingly and voluntarily waive the evidentiary proof of whether the location of an assimilated crime falls within an area of exclusive or concurrent federal jurisdiction, when that jurisdiction is pled in the specification. Cf. United States v. Murphy, 33 M.J. 248 (C.M.A.1991) (in urinalysis based drug use case, appellant waived judicial notice that body doesn’t produce cocaine metabolite without ingestion of cocaine). Appellant did so in this case by not contesting the taking of judicial notice when specifically given the opportunity. Thus, we find the assimilated jurisdiction was proven beyond a reasonable doubt. Compare United States v. Kline, 21 M.J. 366 (C.M.A.1986) (assimilated jurisdiction pled in specification and defense counsel conceded such jurisdiction) with United States v. Dallman, 34 M.J. at 276 (no allegation of assimilated jurisdiction in pleadings or concession of such jurisdiction by defense counsel). See also United States v. Jones, 34 M.J. 270 (C.M.A.1992) (appellant’s guilty plea admitted assimilated jurisdiction).
As a word of caution, we point out that a trial judge may not take judicial notice that the alleged crime in fact occurred at a specific location — that is a question for the trier of fact. The judge may only judicially notice that a certain location is an area of either exclusive or concurrent jurisdiction, and should have some information before the court on which to base that decision. We recommend the judge have the parties consider entering into a stipulation of fact concerning the jurisdictional status of the location when that status is not reasonably in issue. See United States v. Perry, 12 M.J. 112 (C.M.A.1981) (memorandum opinion and order).
*750 REMAINING ISSUES
Appellant contends the proof of vaginal penetration required for a carnal knowledge conviction is lacking, arguing Geraldine and Cynthia gave factually inconsistent stories, and Geraldine originally told AEOSI agents that she did not have “sex” with appellant. We find the evidence of penetration sufficient, beyond a reasonable doubt, to support his conviction of carnal knowledge. See United States v. Turner, 25 M.J. 324 (C.M.A. 1987). In this regard, we accept Geraldine’s explanation at trial that she initially denied having “sex” with appellant because she expected real “sex” to “last longer,” “be more to it,” and “I thought it was, you know, the guy and the girl putting all the effort into it and, you know, both of them wanting to.”
We also reject appellant’s invitation to find the military judge committed plain error by not instructing the members to disregard evidence concerning Airman Moore’s conviction for soliciting Cynthia to have sexual intercourse with him. Appellant did not object to the evidence or seek a limiting instruction. See R.C.M. 920(f); United States v. Robinson, 38 M.J. 30 (C.M.A.1993); United States v. Jackson, 38 M.J. 106 (C.M.A. 1993), cert, denied, — U.S.-, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994).
CONCLUSION
The findings and sentence are correct in law and fact, and on the basis of the entire record are
AFFIRMED.
Judges BECKER and MORGAN concur.