UNITED STATES

v.

Colonel James A. MAXWELL, Jr., 242–72–4448, United States Air Force.

ACM 30704.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Jan. 1993.

Decided 28 April 1995.

Appellate Counsel for Appellant: Mr. Frank J. Spinner (argued), Colonel Jay L. Cohen, and Captain Richard D. Desmond.

Appellate Counsel for the United States: Captain Jane L. Harless (argued), Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Major John H. Kongable.

Before DIXON, PEARSON, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

DIXON, Chief Judge:

This is a case of first impression in the military appellate courts involving criminal misconduct through transmissions and communications using an on-line computer service. It requires us to focus upon how well traditional legal concepts are suited to deal with challenges of the computer age. Specifically, we must decide whether the existing law of search and seizure can be appropriately applied to the search of information stored in computers, and to the seizure of electronically retrievable evidence that some contend exists only in "cyberspace." We find the current body of law is well-equipped to deal with this unique scenario. Having carefully applied the relevant law to the facts before us, we affirm appellant's convictions as correct in law and in fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Contrary to his pleas, Colonel James A. Maxwell, Jr., was convicted by a general court-martial of four specifications of service-discrediting misconduct under Article 134, UCMJ. Two of the specifications alleged that he used his personal computer to communicate indecent language to another servicemember. The other two specifications alleged violations of federal law by using his personal computer (1) to receive or transport visual depictions of minors engaged in sexually explicit conduct[1] and (2) to transport in interstate commerce, for purpose of distribution, visual depictions of an obscene, lewd, lascivious or filthy nature.[2] At a trial before members, appellant was sentenced to a dismissal. The convening authority approved the sentence as adjudged.

Appellant has submitted 13 assignments of error for our consideration on appeal. Included within the assigned errors are a constitutional challenge to one of the federal statutes, allegations that appellant's Fourth Amendment rights were violated, claims that the evidence was legally and factually insufficient to convict, suggestions that the military judge made instructional errors, and the contention that the sentence was cruel and unusual punishment. Two of the issues, those alleging violations of the Fourth Amendment, were the subject of oral argument.[3] We find no grounds for relief in any of the asserted errors.

## I. FACTS

At the time of trial, Colonel Maxwell was a widely respected career officer with over 25 years of outstanding service. Prior to the preferral of charges, he had served as the Commander, Goodfellow Training Center at Goodfellow Air Force Base, Texas, for almost 2 years. Sometime prior to that assignment, Colonel Maxwell had become a subscriber to America Online, a private on-line computer service. At the time, America Online had about 215,000 subscribers nationwide, all of whom were linked to a system of 9 computers located in Vienna, Virginia. Subscribers accessed the computer service by dialing a telephone number using their computer modems. In exchange for a monthly fee, the on-line service provided appellant access, through his personal home computer, to a variety of services including the ability to communicate with other subscribers on "bulletin boards" or by sending electronic mail (e-mail) messages. Pursuant to agreed terms, additional charges were incurred by the users of the service depending upon the length of time spent on-line each month. The on-line computer service was strictly a recreational activity for appellant and had no connection with his official duties. He used the service only at home and when off duty.

Like other subscribers, when appellant opened an account, he provided America Online his name, address and pertinent billing information. On-line access to the service requires the use of a "screen name" and a secret password. Screen names are used to enable the subscribers to identify themselves to other subscribers without having to use their real names. Each subscriber on America Online is allowed up to five screen names at any given time, but no screen name may identify more than one user. America Online individually tracks each screen name for billing purposes. Subscribers are allowed to choose their own screen names provided the name requested has not been assigned to someone else. During the period of the charged offenses, appellant was assigned and had the exclusive use of the following four America Online screen names: Redde1, Zirloc, Concho1, and Jimmax. America Online treated the screen names as separate identities. Each screen name had its own "mail box" which temporarily stored e-mail messages sent to that identity until the user was ready to sign on and electronically retrieve the messages from the mail box. Once appellant had accessed America Online under one screen name, he had to "log off" and

---

1. In violation of 18 U.S.C. § 2252 (1988).

2. In violation of 18 U.S.C. § 1465 (1988).

3. The Court acknowledges that counsel for both sides provided us with well-written and extensively researched briefs which assisted us in reaching our decision. We also commend counsel for their excellent and exceedingly helpful oral arguments in this case.

regain access to America Online in order to use another screen name.

In December 1991, Mr. Roger D. Dietz, a resident of California, reported to FBI Agent Bradley Garrett that he believed a number of subscribers of America Online were using the service to transmit and receive visual images portraying child pornography. Approximately two days later, Mr. Dietz gave FBI Agent Rowland a disk containing some of the visual images he had observed. Mr. Dietz also sent an e-mail message to America Online officials reflecting the screen names and communications of those subscribers he thought were transmitting pornographic images. Agent Garrett opened an investigation and contacted America Online in an effort to ascertain the identities of those involved with child pornography. America Online advised Mr. Garrett that he would need a search warrant to obtain e-mail transmissions by its subscribers.

Following discussions with America Online officials, Agent Garrett began to prepare an affidavit and application for a search warrant. Believing he could provide probable cause to search the America Online computers for pornographic materials, Agent Garrett decided to seek authority to seize electronic transmissions made by the subscribers who were assigned the screen names which Mr. Dietz had furnished to him. On 10 December 1991, the Federal Magistrate for the Eastern District of Virginia issued a search warrant for America Online computers based on the information in Agent Garrett's affidavit.

Anticipating that a warrant would be issued, officials at America Online used the information which Mr. Dietz had provided them to program software which automatically extracted the information which Agent Garrett was seeking from their computers. Consequently, the desired information had been withdrawn from their computers even before the warrant was executed. When the warrant was presented to America Online, their officials turned over to Agent Garrett between 12,000 and 14,000 pages of e-mail messages and 39 high density computer disks containing visual transmissions.

The search warrant permitted the seizure of information in nine America Online computers pertaining to certain listed subscribers. Among the screen names which Mr. Dietz provided to America Online and Agent Garrett as having appeared on pornographic transmissions was "Reddel," one of appellant's four assigned screen names. When the list of screen names was transcribed for the search warrant, appellant's screen name "Reddel" was mistakenly typed as "REDDEL." The change of the last character from the number "1" to the letter "L" fundamentally altered the screen name. As such, America Online computers would not have recognized it as a valid screen name for appellant. If America Online had not been provided information in advance and had not begun the search until the warrant was executed, it is possible appellant would not have been identified as a suspect. However, in preparing for the search, America Online used the screen names it had already received (including the correctly written "Reddel"), and did not take note of any changes or transcription errors which appeared in the list on the search warrant. Consequently, the software, which America Online used to facilitate the search, used "Reddel" to identify appellant as a subscriber. The program extracted all of the e-mail messages and visual transmissions bearing any of appellant's screen names, including communications he made under the screen name "Zirloc."

After discovering, as a result of the search, that an Air Force member was involved in the suspected criminal activity, the FBI turned over all the items seized from America Online to the Air Force Office of Special Investigations (AFOSI), which opened its own investigation of the appellant. Included within the items seized were communications made by appellant to another Air Force member concerning his sexual feelings and preferences. These communications, which were the basis of the charge of communicating indecent language, were made under appellant's screen name "Zirloc" and were sent to the other individual who was utilizing the screen name "Launchboy."

Armed with information obtained from the search of America Online, AFOSI agents met

with Colonel Kenton D. McHenry, the deputy commander of Goodfellow Training Center, for the purpose of requesting a search authorization of Colonel Maxwell's on-base living quarters. Colonel McHenry was the duly appointed military magistrate for Goodfellow. Based on representations made by the agents, and after consulting with a judge advocate, Colonel McHenry issued a search authorization directing the agents to search Colonel Maxwell's quarters. It authorized the seizure of evidence related to the transmission and possession of child pornography and other obscene matter. The search was accomplished on 13 June 1992. Among the items seized during the search was Colonel Maxwell's personal computer, an Apple Macintosh. The subsequent search of the computer produced three visual depictions which were admitted into evidence on the child pornography specification.

## II. FOURTH AMENDMENT ISSUES

Appellant contends the seizure of incriminating evidence from the America Online computers and from his personal computer was unlawful and should have been suppressed. Since the evidence was seized pursuant to search authorizations, we must consider whether these search authorizations were valid under the Fourth Amendment of the United States Constitution and whether the items seized were authorized. The military judge denied motions to suppress the evidence derived from these searches. We will review his decision to determine if the military judge erred in allowing the evidence to be presented.

■■■ As with all Fourth Amendment searches, the key issue is whether the search was reasonable under the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In general, an appellate court should not set aside the factual determinations of a trial judge (on matters other than guilt) unless they are clearly erroneous. *United States v. Burris,* 21 M.J. 140 (C.M.A.1985). Consequently, we will review the military judge's ruling under an abuse of discretion standard.

*Expectation of Privacy*

■■■ The underlying issue in a case involving an asserted violation of the Fourth Amendment is whether the person making the claim has a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Supreme Court noted that a person asserting a right to privacy under the Fourth Amendment has to meet a two-prong test. First, the person must exhibit an actual (subjective) expectation of privacy. The second prong requires a showing that the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable (objective). *See also United States v. Ayala,* 26 M.J. 190 (C.M.A.1988). Stated simply, in order for there to be a search under the Fourth Amendment, the Government must have infringed upon an expectation of privacy society is prepared to consider reasonable. *See United States v. Jacobsen,* 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (upholding an expectation of privacy in wrapped parcel delivered to a private freight carrier); *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (holding there was no expectation of privacy in open fields even when "No Trespassing" signs are posted). The burden of establishing a reasonable expectation of privacy falls upon the appellant. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

■■■ We begin our review with an examination of the military judge's ruling concerning appellant's expectation of privacy in the America Online computers. After examining the Electronic Communications Privacy Act of 1986, the military judge found that the protection of the Fourth Amendment generally applies to e-mail transmissions by subscribers of on-line computer services. However, that finding did not end his inquiry. His ruling concluded that, while appellant had a subjective expectation of privacy in his e-mail transmission, he had no objective expectation of privacy because of the manner in which the transmissions were made. The military judge based his finding of no objec-

tive expectation of privacy on the following factors: (1) the e-mail could not be recalled or erased once it was dispatched and the sender was powerless to keep it from being forwarded, (2) the e-mail messages were transferred to screen names rather than to known individuals, and (3) the forwarding of messages to multiple individuals made the situation analogous to bulk mail. He concluded appellant was seeking anonymity rather than privacy when he sent the e-mail transmissions to multiple subscribers.

To the extent the military judge based his decision to admit the evidence seized during the search of computers at America Online upon the absence of any objective expectation of privacy, we believe he was in error. We agree that appellant well may have forfeited his right to privacy to any e-mail transmissions that were downloaded from the computer by another subscriber or removed by a private individual from the on-line service. However, we find appellant definitely maintained an objective expectation of privacy in any e-mail transmissions he made so long as they were stored in the America Online computers.

In our view, appellant clearly had an objective expectation of privacy in those messages stored in computers which he alone could retrieve through the use of his own assigned password. Similarly, he had an objective expectation of privacy with regard to messages he transmitted electronically to other subscribers of the service who also had individually assigned passwords. Unlike transmissions by cordless telephones, or calls made to a telephone with six extensions, or telephone calls which may be answered by anyone at the other end of the line, there was virtually no risk that appellant's computer transmissions would be received by anyone other than the intended recipients. *See United States v. Parrillo,* 34 M.J. 112 (C.M.A.1992); *United States v. Sturdivant,* 13 M.J. 323 (C.M.A.1982); *United States v. Sullivan,* 38 M.J. 746 (A.C.M.R.1993).

In the modern age of communications, society must recognize such expectations of privacy as reasonable. We believe such recognition is implicit in the Electronic Communications Privacy Act. We also find support

for our determination in the following language by the United States Supreme Court:

> For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office is not subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

### Existence of Probable Cause

Fortunately for the government, the military judge did not stop after ruling the appellant had no reasonable expectation of privacy in the evidence seized from the America Online computers. Instead, he proceeded to rule on the validity of the search authorization itself. Considering the totality of the circumstances, the military judge concluded the federal magistrate had probable cause to issue a warrant authorizing the search of America Online computers. In this respect, we concur with the conclusion reached by the military judge.

Appellant contests the validity of the probable cause search because (1) none of his screen names appeared on either the warrant or attachments thereto and (2) there was no nexus drawn between the screen names listed in the attachments to the warrant and the pictures which the agent offered as evidence of child pornography. He argues the transcription error which made appellant's screen name "Reddel" appear as "REDDEL" invalidated the search with respect to appellant. He also argues the FBI agent failed to adequately demonstrate that either appellant or any other subscriber of America Online was responsible for the transmission of child pornography. We disagree with appellant on all counts.

■ In preparing the request for the search authorization, the FBI agent was totally unaware there was any material difference between "Reddel" and "REDDEL." When using screen names on computer services, it normally does not matter whether the screen name is typed in upper or lower

case. However, the lower case of the letter "L" can not be used to make the number "one" in a screen name. Appellant is right when he contends that a search of the screen name "REDDEL" in the America Online computers would have disclosed no information or evidence pertaining to appellant. However, the issue before this Court is whether the incorrect transcription on the search warrant invalidated the search. We conclude it did not.

The validity of a search warrant must be assessed on the basis of the information the officers disclosed to the issuing magistrate. *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1986). There was no confusion in the minds of the federal magistrate, the FBI agent, or the officials at America Online about which screen names they wished to search. Everyone understood that the screen names appearing on the images which were reported to America Online by Mr. Dietz, as containing child pornography, were the ones to be searched. America Online used those screen names in formulating the software needed to complete the search and had already retrieved the information before the search warrant was served on them. Consequently, they did not notice that an incorrect transcription of appellant's screen name "Redde1" appeared on the warrant. We conclude that a typographical error in the description of the place or thing to be searched does not invalidate the search when the intended place or thing is searched pursuant to the warrant. *See United States v. Arenal*, 768 F.2d 263 (8th Cir.1985) (upholding search despite typographical error which changed street address from 3028 Third Avenue to 3208 Third Avenue); *United States v. Christopher*, 546 F.2d 496 (2nd Cir. 1976) (holding a clearly accidental transposition of room numbers did not make the search illegal since there was no question but that the room intended as the object of the search was the one actually searched); *United States v. Larracuente*, 740 F.Supp. 160 (E.D.N.Y.1990) (holding the accidental transposition of room numbers did not invalidate the search).

Appellant's argument that no connection was made between the screen names to be searched and the visual images which provided the probable cause for the search is unfounded. The military judge made the following finding:

I find that the totality of the circumstances reflected in the evidence presented to Judge Sewell, that is, the facts contained in the affidavit of Special Agent Garrett and attachments to that affidavit establish that the magistrate issued the warrant upon such probable cause within the intent and meaning of the Fourth Amendment.

Our own review leads to the same conclusion. The affidavit prepared by Mr. Garrett clearly established the necessary nexus between the screen names and the transmission of images depicting child pornography. The pertinent portion reads as follows:

Dietz provided computer disks to Agent Rowland containing the code names of individuals sending child pornography (*see* Attachment A) as well as some of the child pornography that Dietz received from these individuals (*see* Attachment B).

Based on the matters presented to the federal magistrate, we have no difficulty concluding that probable cause was established to justify a search of America Online computers to ascertain the identities of the persons involved in the illegal transmissions. Particularly, we believe probable cause was established to identify appellant as the user of the screen name "Redde1" and to seize the e-mail transmissions that appellant made under that screen name. However, we do not believe probable cause was established with respect to e-mail boxes maintained by America Online under any of appellant's other screen names.

In determining the validity of the search of America Online computers, we have determined electronic transmissions were separately stored under each of the screen names associated with the transmissions. Transmissions to and from the user of screen name "Redde1" were stored separately from transmissions to and from the user of screen name "Zirloc" even though the same person, namely the appellant, had been assigned both screen names. For purposes of a probable cause analysis, we must be satisfied that

probable cause existed for each location searched. In this case, we draw the analogy to separate mail boxes in a post office. The same individual may have two mail boxes in the same post office, perhaps one for business use and the other for personal mail. The fact that probable cause exists to search one of the two boxes does not necessarily mean probable cause exists to search the other. If authorities had evidence that the individual with two mail boxes was using the U.S. mails for criminal activities, conceivably there could be probable case to search both mail boxes. However, if authorities only had information that one of the two boxes was being used for illegal purposes, ordinarily there would not be probable cause to search the other mail box. Probable cause means there is a reasonable belief that the evidence sought is located in the place to be searched. Mil.R.Evid. 315(f)(2). In this case, the only location in the America Online computers at which authorities would have a reasonable belief that they would find obscene transmissions bearing the name "Redde1" would be in the e-mail box of "Redde1." Accordingly, we find the search warrant was defective for the purposes of seizing stored transmissions which were in the mail box under the screen name "Zirloc."

The search warrant required America Online to turn over the "contents of each message in the E Mail of each specified user." Pursuant to the warrant, America Online released all of appellant's messages regardless of which screen name he had used. Consequently, the FBI obtained not only the visual transmissions bearing appellant's screen name "Redde1," but also the indecent communications to "Launchboy" which appellant made using his screen name "Zirloc." However, having found the search warrant deficient for the purpose of seizing communications made by appellant under screen names other than "Redde1" does not automatically mean we find the other evidence seized was inadmissible at trial. We must look at whether the circumstances of this particular violation of the appellant's Fourth Amendment rights warranted suppression of the evidence obtained from the "Zirloc" mailbox.

## Good Faith Exception

■ In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court recognized a "good faith exception" to the exclusionary rule. The facts of this case convince us the evidence seized from the "Zirloc" mailbox, the search for which was not supported by probable cause, is nevertheless admissible under this exception. *Leon* established that the Fourth Amendment exclusionary rule would not bar evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if the warrant was ultimately found to be invalid.

The "good faith exception" has been incorporated into military law. Mil.R.Evid. 311(b)(3) states:

Evidence that was obtained as a result of an unlawful search or seizure may be used if:

(A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil.R.Evid. 315(d) or from a search warrant or arrest issued by competent authority;

(B) The individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and

(C) The officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith shall be determined on an objective standard.

*See also United States v. Chapple,* 36 M.J. 410 (C.M.A.1993); *United States v. Lopez,* 35 M.J. 35 (C.M.A.1992).

■ Our objective conclusion that the good faith exception applies in this case is based on a number of factors. Specifically, we find there was probable cause for the issuance of a warrant for some of the items seized. We note the FBI agent acted in good faith in preparing the affidavit, consulted with an assistant United States attorney prior to seeking the warrant, and acted in good faith in executing the warrant. We also

find that the FBI agent and the officials at America Online acted with a good faith and reasonable reliance upon the validity of the search warrant. Finally, the authority issuing the warrant did not abandon his role as a neutral and detached magistrate. Although the military judge did not use the good faith exception in denying the motion to suppress the evidence, his decision denying the motion to suppress nonetheless was correct.

The rationale behind the exclusionary rule is deterrence of police misconduct. *Leon,* 468 U.S. at 906, 104 S.Ct. at 3411–12. Unless this purpose would be served, there is no proper reason to invoke the exclusionary rule. *Id.; United States v. Pond,* 36 M.J. 1050, 1059 (A.F.C.M.R.1993). None of the circumstances, which *Leon* suggested should prevent the application of the good faith exception, existed in this case. We find no reckless disregard for the truth or intentional deceptions on the part of the requesting officials. Nor do we find the warrant was so facially deficient that no reasonable individual could have relied upon it. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420–21. Here, it was America Online which took the magistrate at his word and turned over the "E Mail of each specified user," including the information stored in the "Zirloc" mailbox. The FBI was in no way responsible for the seizure of evidence from that location. It would make no sense to apply the exclusionary rule under these circumstances.

### On Base Search

Appellant also challenges the search of his on-base quarters pursuant to the search authorization issued by Colonel McHenry. He contends that Colonel McHenry lacked knowledge of the definition of either child pornography or obscenity under federal law. He also asserts the warrant was overly broad in that it did not describe with particularity the items to be seized. The military judge found the search of appellant's on-base quarters to have been lawful and so do we.

We note that OSI agents took over an hour to brief Colonel McHenry and that the briefing was in the presence of a judge advocate. It is clear from the record that Colonel McHenry appreciated the legal nature of his magistrate role and that he exercised his responsibilities with great care and thoughtfulness. The briefing informed Colonel McHenry of the items seized from the America Online computers which pertained to appellant. He was shown the visual images that had been recovered from the computers. He was advised that appellant had used the on-line service within the last two weeks. We find that Colonel McHenry applied the totality of circumstances standard and issued a search authorization based upon a probable cause belief that criminal evidence would be found in appellant's residence. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1982); *United States v. Lopez,* 35 M.J. 35 (C.M.A.1992).

We reject appellant's contention that the search authorization was too broad. It authorized the search of appellant's residence and the seizure of obscene materials and items that related to his activities with on-line computer services or electronic bulletin boards, including his personal computer. Given the nature and complexity of the case, we are convinced the search authorization described with sufficient particularity the items to be seized. *United States v. Modesto,* 39 M.J. 1055 (A.C.M.R.1994).

### III. OTHER ASSIGNED ISSUES

Among appellant's assigned errors are a number of issues which warrant little discussion. These issues either did not materially affect the outcome of the proceedings, have not been adequately substantiated, or must be resolved adversely to appellant under existing legal precedent. Nevertheless, we carefully considered each in the course of our review.

### Scienter Requirement

Appellant asserted that his conviction on the charge of knowingly receiving or transporting, in interstate commerce, visual depictions of minors engaged in sexually explicit conduct must be set aside because the applicable federal statute, 18 U.S.C. § 2252, was unconstitutional. His rationale was the statute lacked a scienter requirement. This

issue has become moot in light of a recent holding of the Supreme Court that the statute contains a scienter requirement because the word "knowingly" must be read as applying to the words "use of a minor." *United States v. X–Citement Video, Inc.*, 513 U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

## Applicability of Statute

We are asked to decide whether the transmission of visual images electronically through the use of an on-line computer service is a violation of 18 U.S.C. § 1465.[4] The argument advanced by appellate defense counsel is that the statute is silent concerning whether computer transmissions are included within the terms "transporting obscene material in interstate or foreign commerce." In construing unambiguous statutes, judicial inquiry begins and ends with the plain language of the statute. *See Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981). The use of the terms "transports," "distribution," "picture," "image" and "electrical transcription" leads us to the inescapable conclusion the statute is fully applicable to the activities engaged in by appellant. We reject the claim Colonel Maxwell was denied due process under the Fifth Amendment because he was never placed on notice that his conduct could be criminally prosecuted. It is clear Congress intended to stem the transportation of obscene material in interstate commerce regardless of the means used to effect that end.

## Criminality of Private Communications

Appellant also challenges the legal sufficiency of his conviction on two specifications of communicating indecent language. He argues a conviction of communicating indecent language cannot rest upon private, non-commercial, consensual e-mail messages sent by one anonymous America Online subscriber to another anonymous America Online subscriber. Appellant does not contest the indecent nature of the language used in the messages, but asserts the conviction violates his First and Fifth Amendment rights because they were intended to be private and there was no government interest advanced by the prosecution for criminalizing this type of communication.

Motions to dismiss on these grounds were made at trial and denied by the military judge. We concur with the military judge's ruling. Had the communications remained truly private, it is clear no prosecution would have resulted. Unfortunately for the appellant, the communications were revealed as a result of his own criminal activities while using his computer. Accordingly, we find the grounds under which appellant seeks relief are without merit. The language used by appellant lowers his standing as an Air Force officer. The fact it was made under circumstances he believed would be private does not lessen the discrediting nature of the conduct. Furthermore, the First Amendment does not afford protection to indecent language under the circumstances of this case. *United States v. Moore*, 38 M.J. 490 (C.M.A.1994).

## Sufficiency of Evidence

Appellant contends the evidence is legally and factually insufficient to convict him of receiving or transporting visual depictions of minors engaged in sexually explicit conduct. He argues the evidence which was introduced displayed "mere nudity," and that the government failed to prove beyond a reasonable doubt the individuals depicted in the prosecution exhibits were under 18 years of age. We disagree.

The military judge properly instructed the members the depictions could not be found to be lascivious if they portrayed mere nudity. To be lascivious, the visual images do not have to show sex or a willingness to engage in it. *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir.1987),

---

4. The pertinent portion of the statute reads as follows:

Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, photograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). The prosecution exhibits speak for themselves. Whether or not they violate the "sexually explicit" standard was an issue for the triers of fact. Expert testimony from both the government and defense was offered at trial regarding the ages of the individuals shown in the exhibits. Both experts agreed they had no way of determining the actual age of the individuals, but the government expert testified concerning his opinion that the individuals shown were minors. The evidence is legally sufficient. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Like the members, we are ourselves convinced beyond a reasonable doubt the prosecution exhibits depict minors in sexually explicit poses. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

Appellant also challenges the legal and factual sufficiency of his conviction of distributing obscene depictions through the on-line computer service, based upon the failure to prove the transmissions violated community standards. He argues the military judge inappropriately advised the court members to use a "nation-wide community standard" in determining whether appellant violated the federal statute. He also states the government failed to present any evidence concerning what the relevant standards were.

■■■ Clearly, the members were permitted to decide for themselves whether the transmissions were obscene and had no difficulty doing so. This Court finds the members were well equipped to make this factual determination. Colonel Maxwell's community, for purposes of this offense, was Air Force-wide. The transmissions were sent by computer to various locations around the nation. More importantly, the offense was charged under Article 134, UCMJ, as service discrediting conduct. If anything, we believe the application of the broader standard in this case was to appellant's benefit. We again are convinced beyond a reasonable doubt of appellant's guilt and find no grounds to overturn his conviction based on the failure to present evidence or instruct on community standards. We hold the application of the military community standard for ob-

scenity in trials by court-martial does not offend the Constitution. *See United States v. Dyer,* 22 M.J. 578 (A.C.M.R.1986). Regardless, we believe the exhibits upon which this conviction was based would inevitability have been found obscene under either civilian or military community standards. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

### Best Evidence Rule

■■■ At trial, the defense objected to the admission of prosecution exhibits which displayed the explicit images which had been downloaded from computers and seized as a result of the search warrants. The defense asserted the exhibits had been created by the government and violated the "best evidence" rule. The defense argued a computer should have been brought into the courtroom and the images displayed on the computer screen. The defense based its contentions on Mil.R.Evid. 1002 which reads as follows:

> To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, this Manual, or by Act of Congress.

After listening to arguments from both sides, the military judge denied the defense objection and allowed the hard copy exhibits to be admitted. He ruled the admission of the prosecution exhibits did not violate the intent or the meaning of the best evidence rule. We find he ruled correctly. In fact, the admitted exhibits were themselves originals. The following language in Mil.R.Evid. 1001(3) defines what is meant by an "original" when evidence is drawn from a computer:

> If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately is an "original."

### Judge's Instructions

Three of the assigned errors challenge the correctness of the military judge's instructions. First, appellant contends the military judge erred while instructing on the scienter requirement under 18 U.S.C. § 2252 by tell-

ing the members they must be convinced appellant "knew or believed" the persons depicted were under 18 years of age. Next, he contends the military judge erred in instructing the members on the community standard for obscenity under 18 U.S.C. § 1465 by telling them "community standards are set by what is in fact accepted in our nation-wide community as a whole" and "in determining the common conscience of the community you are to consider the community as a whole, young and old." Thirdly, he asserts the military judge committed prejudicial error by failing to properly define "indecent" or "obscene" when he instructed on the communicating indecent language offense. We find no errors in the judge's instructions.

■■■ Appellant can cite no authority for his contention the military judge erred in denying his objection to the instruction which allowed members to convict appellant without his actual knowledge that the person depicted in the visual images were under the age of 18. We are satisfied the scienter requirement appropriately was met because the evidence was sufficient to show appellant believed they were minors. If actual knowledge of the individual ages were required, it would be virtually impossible to convict unless the identity of those depicted were known. Under the circumstances, we cannot say the military judge abused his discretion in formulating the instruction. *United States v. Damatta–Olivera*, 37 M.J. 474 (C.M.A. 1993).

The defense entered no objections at trial to the military judge's instructions concerning the relevant community standards for determining obscenity. As we have previously discussed, we are convinced appellant suffered no prejudice from the instruction which allowed the members to consider the Air Force as a nation-wide community. In the absence of plain error, appellant's failure to object to the finding instructions at trial waives the objection. R.C.M. 920(f); *United States v. Robinson*, 38 M.J. 30 (C.M.A.1993). This instruction was not plain error.

■■■ Likewise, we find appellant, by failing to object at trial, waived any issue concerning the military judge's failure to instruct on the definition of obscenity while instructing on the elements of communicating indecent language. Moreover, we find no requirement to instruct on obscenity in setting forth the offense of indecent language. The instruction given by the military judge incorporated all of the essential elements necessary to convict on the charge of communicating indecent language. MCM, Part IV, paragraph 89 (1984); *United States v. Hullett*, 40 M.J. 189 (C.M.A.1994).

### Unlawful Command Influence

One of the issues raised at trial was a claim by appellant that the decision to refer his case to trial by court-martial resulted from unlawful command influence. The defense moved for a dismissal of charges based on a belief that the Commander, Air Training Command (the immediate superior of the convening authority), had not wanted the case to go to trial. The defense claimed the decision to take the case to trial was made by the Air Force Chief of Staff who improperly influenced subordinates in their handling of the case.

In support of the motion to dismiss, the defense called two witnesses, Mrs. Maxwell, the appellant's wife, and Colonel Wehre, the Goodfellow Training Center Commander. Mrs. Maxwell testified she was told at a golfing event that the handling of her husband's case was not the way the Commander, Air Training Command, had wanted but that he had been overruled. On cross-examination, Mrs. Maxwell admitted it was not made clear the comments were related to the decision to court-martial her husband. In his testimony, Colonel Wehre, who had Article 15 authority over appellant and who was appellant's accuser on the charge sheet, categorically denied any of his superiors had told him how he should handle appellant's case.[5]

Having listened to the evidence and hearing argument from both sides on the defense's motion, the military judge denied the motion. The military judge, in summarizing his findings, stated "This court finds that there has been absolutely no evidence of

5. The Commander, Sheppard Training Center, was the convening authority.

undue command influence or the appearance of command influence." It is apparent from the record the military judge recognized the importance of promptly and openly dealing with any claims of undue command influence. It is equally clear he ruled correctly in denying the motion.

 Military judges and appellate courts have a firm obligation to ensure claims of unlawful command influence are adequately resolved. Unlawful command influence is not only prohibited but is punishable as an offense under the Uniform Code of Military Justice. Article 37 and 98, UCMJ. There can be no doubt that "command influence is the mortal enemy of military justice." *United States v. Thomas,* 22 M.J. 388, 393 (C.M.A.1986). Although "the threshold triggering further inquiry should be low," something more than a bare assertion or mere speculation must be shown. *United States v. Johnston,* 39 M.J. 242, 244 (C.M.A.1994); *United States v. Allen,* 33 M.J. 209 (C.M.A. 1991). We commend the military judge in this case for the forthright manner he dealt with this issue and concur fully with his conclusion that the claim of unlawful command influence is unsupported by the facts.

*Sentence Appropriateness*

██ Finally, appellant contends his sentence to a dismissal constitutes excessive, cruel, and unusual punishment under the Eighth Amendment and is unduly excessive because it strips appellant of his retirement benefits. Although we are impressed by appellant's long service record, we do not agree his sentence is unconstitutionally harsh or unduly severe. Considering the entire record, the character of the offender, and the nature of the offense for which he is being sentenced, we are satisfied appellant received no greater punishment than he deserves. *United States v. Healy,* 26 M.J. 394 (C.M.A. 1988).

## IV. CONCLUSION

Having examined the record of trial, the assigned errors, the government's reply thereto and having carefully considered the oral argument by both sides, we conclude the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Judges PEARSON and BECKER concur.