# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––––

## No. ACM 38881

––––––––––––––––––––

## UNITED STATES
*Appellee*

v.

## Tyler G. EPPES
Captain, U.S. Air Force, *Appellant*

––––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary

Decided 21 February 2017

––––––––––––––––––––

*Military Judge:* Shaun S. Speranza (sitting alone).

*Approved sentence:* Dismissal, confinement for 10 years, forfeiture of all pay and allowances, and a fine of $64,000, with an additional 3 years of confinement if the fine in not paid. Sentence adjudged 24 April 2015 by GCM convened at Joint Base Andrews, Maryland.

*For Appellant:* Captain Annie W. Morgan, USAF; and William E. Cassara, Esquire.

*For Appellee:* Major Jeremy D. Gehman, USAF; and Gerald R. Bruce, Esquire.

Before DUBRISKE, HARDING, and C. BROWN, *Appellate Military Judges*

Senior Judge DUBRISKE delivered the opinion of the Court, in which Judges HARDING and C. BROWN joined.

––––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

––––––––––––––––––––

DUBRISKE, Senior Judge:

Consistent with his pleas pursuant to a pretrial agreement, Appellant was convicted by a military judge sitting alone of conspiracy, false official statement, larceny of both military and non-military property, fraud against the United States Government, and conduct unbecoming an officer, in violation of Articles 81, 107, 121, 132, and 133, UCMJ, 10 U.S.C. §§ 881, 907, 921, 932, 933. Additional specifications for false official statement were dismissed by the Government upon acceptance of Appellant's guilty plea. The Government also agreed as part of the pretrial agreement that it would not attempt to prove up allegations that Appellant was responsible for the theft of approximately $65,000.00 in legal currency from a deployed location.

Appellant was sentenced to a dismissal, confinement for ten years, forfeiture of all pay and allowances, and a fine of $64,000.00, with an additional three years of confinement if the fine is not paid. The convening authority approved the sentence as adjudged.

Appellant raises seven issues on appeal: (1) the military judge erred in failing to suppress evidence obtained during various searches of Appellant's person, personal bags, vehicle, and off-base residence, as well as evidence seized from Appellant's government computers, communication devices, and work spaces; (2) his plea to conspiring to violate a lawful general regulation was improvident; (3) his plea to one specification of conduct unbecoming an officer was improvident; (4) a conduct unbecoming an officer specification alleging Appellant improperly transferred monies into the United States fails to state an offense; (5) the convening authority erred in summarily denying Appellant's request for deferral of forfeitures; (6) his sentence is inappropriately severe; and (7) various charges are either multiplicious or the charging amounted to an unreasonable multiplication of charges.

As we find no error substantially prejudices a substantial right of this Appellant, we now affirm.

## I. BACKGROUND

Appellant, a special agent with the Air Force Office of Special Investigations (AFOSI), engaged in frequent foreign travel while providing counter-intelligence support to Air Force Special Operations Command forces. The nature of his duties allowed Appellant to travel with very little oversight by his chain of command. After completion of this assignment, Appellant was competitively selected to provide personal security protection to senior Air Force leaders, which again required significant travel at government expense.

The majority of the charged offenses surrounded Appellant's submission of fraudulent travel vouchers over the course of almost four years. With regard

to some of the vouchers, Appellant travelled as claimed on the voucher, but manipulated his travel dates, expenses, or modes of transportation to obtain additional reimbursement from the United States Government to which he was not entitled. Some travel vouchers, however, were entirely fraudulent as Appellant did not engage in government travel as claimed. In total, Appellant submitted at least 41 fraudulent claims resulting in over $80,000.00 in loss to the United States.

In addition to his fraudulent travel, Appellant filed false claims against the United States Government for a permanent change of station move and vehicle damage. Appellant also stole two government cameras, valued at approximately $4,969.00 each, selling one of them to a college friend for $1,150.00.

While committing fraud against the United States Government, Appellant also submitted fraudulent claims in the amount of $91,000.00 to a commercial insurance company for personal property he alleged was stolen from his residence. To facilitate at least $47,000.00 of this fraud, Appellant created false documents to support the loss of the property or inflate its value.

Appellant's fraudulent activity came to light when a manager at a hotel in Dallas, Texas, contacted Appellant's office at the Pentagon. Appellant was scheduled to have his wedding at the hotel, but promoted the event as an official Air Force function given his position within the Pentagon. In addition to demanding additional security measures for his event, Appellant requested he and his guests receive tax-exempt status for all state taxes.

Appellant, unhappy with the service provided by the hotel, eventually informed the hotel manager that he would use his official position to "blacklist" and "classify" the hotel, thereby limiting the hotel's ability to accept government travelers. Concerned about the potential loss of government business, the hotel manager contacted one of Appellant's co-workers, another AFOSI special agent, who eventually relayed the complaint to Appellant's commander. When the commander contacted Appellant about the complaint, Appellant informed her the complaint was a misunderstanding and would be resolved.

Notwithstanding Appellant's assurances, a decision was made to further investigate the allegations Appellant had abused his position or authority. Prior to speaking with Appellant, the assigned AFOSI investigator interviewed hotel employees and secured documents showing Appellant fraudulently obtained tax-exempt status for his wedding. The investigating agent also discovered during a background check that Appellant had previously been subjected to discipline for falsifying travel orders.

Additionally, when interviewing Appellant's co-workers, the investigator discovered Appellant had created false invitational travel orders for the co-

worker to attend Appellant's wedding as a member of Appellant's personal security team. Additional false documents were discovered in a file folder found in a desk at the Pentagon office Appellant shared with multiple co-workers. Based on all of this information, the AFOSI investigator obtained a search warrant for Appellant's off-base residence, which yielded additional evidence of fraudulent activity by Appellant.

Additional facts necessary to resolve the assignments of error are provided below.

## II. DISCUSSION

### A. Improper Searches and Seizures

As he did at trial, Appellant claims on appeal that the Government violated his Fourth Amendment[1] rights in executing a number of searches and seizures of evidence during their investigation of allegations against Appellant. We address each aspect of this assignment of error in turn below. While Appellant's suppression motion would have normally been waived by his guilty plea, his pretrial agreement conditionally preserved the right to raise this issue on appeal.[2]

We review a military judge's denial of a suppression motion under an abuse of discretion standard and "consider the evidence 'in the light most favorable' to the prevailing party." *United States v. Rodriguez*, 60 M.J. 239, 246–47 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)). In performing our review, "we review fact-finding under the clearly-erroneous standard and conclusions of law under the de novo standard." *Id.* (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). On mixed questions of law and fact, "a military judge abuses his discretion if his findings are clearly erroneous or his conclusions of law are incorrect." *Id.* "The abuse of discretion standard calls for more than a mere difference of opinion. The chal-

---

[1] U.S. Const. amend. IV.

[2] We once again caution servicemembers facing court-martial, trial practitioners, staff judge advocates, and convening authorities about the pitfalls of accepting conditional offers to plead guilty when the resolution of the underlying issue is not case dispositive. *See generally, United States v. Phillips*, 32 M.J. 955 (A.F.C.M.R. 1991). Here, for example, the suppression of evidence as requested by Appellant would not have prevented the Government from going forward on various charges related to Appellant's travel fraud and misuse of position. The limited record of trial from Appellant's guilty plea, however, restricts our ability to assess how the challenged evidence identified during motion practice ultimately impacted the offenses charged in this case.

lenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (citations and internal quotation marks omitted).

After taking a significant amount of evidence on the Defense's motion to suppress evidence at trial, the military judge issued a 29-page written ruling containing comprehensive findings of fact and conclusions of law. We adopt the military judge's factual findings as they are not clearly erroneous. *See United States v. Robinson*, 58 M.J. 429, 433 (C.A.A.F. 2003).

Given our determination regarding the military judge's factual findings, we are left to examine whether the military judge properly applied the correct law to the factual matters developed from Appellant's case. Overall, we find the searches and seizures in this case comport with the constitutional requirement of reasonableness; thus, the military judge did not abuse his discretion.

## 1. Search of Appellant's Government Office on 29 November 2012

Shortly after AFOSI began investigating Appellant for his conduct with the Dallas hotel, Appellant's co-worker, SP, who was also an AFOSI special agent, found fraudulent travel documents in a file folder located in a drawer of a government desk Appellant shared with co-workers at the Pentagon. Special Agent SP discovered the documents when looking for a memorandum for record (MFR) Appellant had prepared to justify expenses for government travel taken by Appellant and some of his co-workers. Appellant had previously informed Special Agent SP that he believed he had left the MFR in the office before he departed for leave to attend his wedding. Special Agent SP needed the MFR to allow an enlisted co-worker to file a travel voucher for payment which had been previously rejected. While a label affixed to the file folder referenced a "wedding shower" in Dallas, Texas, Special Agent SP believed the MFR could have been included in the folder as the dates on the label corresponded to the dates for the travel covered by Appellant's MFR. The MFR was not found in this particular file folder, but was later located by Special Agent SP in the same desk drawer.

While Appellant acknowledges in his brief that his expectation of privacy in a shared desk within a non-private government office is likely limited, he claims he still retained a privacy interest in the personal items stored in this desk such as the "closed" file folder in this case. Appellant also questions the military judge's finding that Special Agent SP's opening of the folder was for work-related purposes. In particular, Appellant notes that even if the initial examination of the folder was non-investigatory and administrative in nature, Special Agent SP should have stopped his examination of the folder when he realized the fraudulent nature of the first document and immediately sought a search warrant.

Examining the specific facts of this case, we have significant doubt as to Appellant's claim of a reasonable expectation of privacy in a file folder contained in a shared government desk. *See O'Connor v. Ortega*, 480 U.S. 709, 717–18 (1987) (noting that a government employee's expectation of privacy in the workplace is limited and that a government office "is seldom a private enclave free from entry by supervisors [and] other employees . . . ."); *see also United States v. Battles*, 25 M.J. 58, 60 (C.M.A. 1987) (finding no reasonable expectation of privacy in berthing area on naval vessel or in an unsealed and open box located within the vessel's common spaces); *see also United States v. Neal*, 41 M.J. 855, 860 (A.F. Ct. Crim. App. 1994) (questioning whether a reasonable expectation of privacy exists in an open locker located in a common area). We also discount Appellant's challenge to the military judge's finding that Special Agent SP's examination of the folder was for non-investigatory, work-related purposes and therefore proper. *See generally City of Ontario v. Quon*, 560 U.S. 746, 761 (2010).

We need not address these issues in depth here, however, as the evidence from the file folder, which was not used in support of any of the charged offenses, did not taint subsequent searches, including the primary search of Appellant's residence as detailed below.[3] While the evidence obtained from Special Agent SP's examination of the folder was included in the probable cause affidavit used to secure the civilian search warrant of Appellant's residence, we find the Government already had sufficient information to secure the warrant prior to Special Agent's SP's review of material in Appellant's shared desk. In particular, we note the Government was already aware of Appellant's submission of fraudulent state tax exempt forms to the hotel in Dallas, and had been provided with copies of false travel orders by one of Appellant's co-workers who traveled to Appellant's wedding. Additionally, the Government had knowledge of Appellant's previous attempts to falsify travel orders. As we are confident probable cause would have still existed without the evidence uncovered by Special Agent SP, we decline to grant Appellant relief on this particular claim. *See United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001) (courts may

---

[3] Appellant's office was later search by criminal investigators without a search warrant under the theory Appellant had no reasonable expectation of privacy in a shared government office. Appellant does not directly challenge on appeal any of the evidence derived from this investigative step. We note multiple government computers used by Appellant and his co-workers were seized during this search. To the extent Appellant suggests the Government improperly obtained evidence from the search of these computers, we reject this claim. *See United States v. Larson*, 66 M.J. 212, 215 (C.A.A.F. 2008).

sever improperly obtained information from affidavits and examine the remainder to determine if probable cause still exists).

### 2. Search of Appellant's Residence on 7 December 2012

Appellant next argues the search of his off-base residence on 7 December 2012 was invalid as the warrant issued by a civilian judge was overbroad in that: (1) it lacked particularity with respect to things to be seized; and (2) it permitted the Government to search for and seize government property even though there was no probable cause to believe such property was evidence or fruits of a crime committed by Appellant.[4]

The Fourth Amendment's requirement that a warrant particularly describe the scope of a search prevents the government from engaging in "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). The specific description of things to be seized and the place to be searched "eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *United States v. Greene*, 250 F.3d 471, 476–77 (6th Cir. 2001) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991)). To meet this requirement, a "warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). However, the degree of specificity required depends on the crime involved and the types of items sought. *Blakeney*, 942 F.2d at 1026. To be valid, the warrant description need only be "as specific as the circumstances and the nature of the activity under investigation permit." *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (internal citation omitted). Military Rule of Evidence (Mil. R. Evid.) 315(b)(1) echoes the Fourth Amendment's particularity requirement.

The warrant issued by a civilian judge for the search of Appellant's off-base residence authorized, based on the information in the accompanying affidavit from the AFOSI investigator, the search and seizure of "evidence of fraud to

---

[4] The second page of the affidavit in support of the search of Appellant's residence on 7 December 2012 is missing from the Government's response to the suppression motion at Appellate Exhibit II. Although there were discussions on the record about correcting this oversight, the original record of trial filed with the court still contains the omission. As the missing page is found in the Defense's motion at Appellate Exhibit I, the omission did not inhibit our review of this assignment of error.

include travel orders, letters, notes, financial records, receipts, computer hardware, computer software and digital media (e.g., computer equipment, digital storage devices, cameras, photographs, etc.), and for evidence of fraud."

Appellant first argues the addition of the phrase "and for evidence of fraud" in the supporting affidavit resulted in the warrant becoming an improper general search.[5] Specifically, Appellant suggests the warrant was so "amorphously worded as to result in the indiscriminate seizure of relevant and non-relevant material alike." In so arguing, however, Appellant acknowledges the warrant and supporting affidavit do attempt to identify evidence of the fraud such as travel orders, financial records, and receipts among other items. We review de novo whether the search authorization was overly broad, resulting in a general search prohibited by the Fourth Amendment. *United States v. Maxwell*, 45 M.J. 406, 420 (C.A.A.F. 1996).

We do not find the language used here is overbroad given the nature of Appellant's offenses. In *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006), the Sixth Circuit examined a search warrant in connection with a fraud investigation. There, investigators sought business and financial records in connection with the defendant's bank fraud. Recognizing the difficulty facing law enforcement to specifically identify which records or files might contain evidence of a fraudulent scheme, the court held the authorization to search for general business records of a fraud scheme was not overbroad.

> In this case, the warrant was specific in terms of the items to be seized; for example, it listed "logs or ledgers that reflect the recording of banking activity," "all bank statements, deposit slips, withdrawal slips, official checks, money orders, cancelled checks, wire transfers and other documents for any and all bank accounts," and other specific forms of records. Moreover . . . the law enforcement agents in this case could not have known the precise documents and records Defendants utilized in the check kiting scheme. The items listed in the warrant were items "likely to provide information" about Defendants' check kiting scheme. A more specific alternative did not exist to the search warrant's list of items to be seized.

*Id.* at 575–76.

---

[5] We question whether the addition of this language was a scrivener's error given the use of the same language at the beginning of the challenged phrase. In any event, for the reasons noted below, we do not find the addition of this language resulted in a general search warrant.

Likewise, we believe the language of this warrant was sufficiently narrowed to focus law enforcement on the items to be seized based on Appellant's fraudulent scheme. The fact that the warrant included more expansive language after describing specific items of evidence subject to this fraud investigation does not by itself establish the warrant was somehow overbroad. *See United States v. Modesto*, 39 M.J. 1055, 1059 (A.C.M.R. 1994), *aff'd*, 43 M.J. 315 (C.A.A.F. 1995). Instead, we examine both the warrant and the supporting affidavit to determine whether the search identifies the crimes committed and the items which could be evidence of those crimes. *See United States v. Martinelli*, 454 F.3d 1300, 1308 (11th Cir. 2006). The warrant in this case did just that.

Absent the seizure of blank prescription drug forms and empty prescription medication boxes, Appellant provides no other examples of evidence seized by AFOSI that failed to comport with the terms of the search warrant. Instead, Appellant simply argues the military judge's determination that these specific items fell within the scope of the warrant reflects the expanded nature of the search. In arguing this point, however, Appellant ignores the fact that the military judge found that even if these items were not subject to the warrant, the items were properly seized under the plain view doctrine. This finding by the military judge was supported in both law and fact. *See United States v. McMahon*, 58 M.J. 362, 367 (C.A.A.F. 2003) (holding that law enforcement personnel conducting a lawful search may seize items in plain view if they are acting within the scope of their authority and have probable cause to believe the items are contraband or evidence of a crime). As Appellant cannot point this court to any evidence improperly seized based on his expansive reading of this warrant, we decline to grant relief.

Appellant also claims the warrant improperly allowed AFOSI to seize items of government property found in Appellant's off-base residence even though these items were not connected to any criminal offense being investigated by AFOSI. Similar to his argument above, Appellant fails to identify items of government property improperly seized that was evidence potentially to be used against him at trial.

Given Appellant's misuse of his position, we cannot say the civilian judge's probable cause determination was deficient, or that AFOSI agents executing the search did not have a good faith basis to seize government property in Appellant's possession. *See generally* Mil. R. Evid. 311(c)(3); *United States v. Lopez*, 35 M.J. 35, 42 (C.M.A. 1992). In attacking the probable cause determination, Appellant suggests the AFOSI agent submitted inaccurate information about Appellant's status as an AFOSI investigator. As found as fact by the military judge, however, Appellant had been informed by his commander that his ability to carry weapons as an AFOSI agent had been revoked. Appellant

was also given a no-contact order which effectively prevented him from performing his personal security duties for senior Air Force officers. As such, we cannot not agree with Appellant that the civilian judge in his case was provided with inaccurate or false information by AFOSI when authorizing the seizure of government property.

Moreover, we believe these items of government property would have been lawfully secured by the Government even if specific authorization had not been granted in this case. As recognized by Appellant, he had no expectation of privacy in the government property in his possession. Instead, Appellant argues the seizure was improper as he did maintain a reasonable expectation of privacy in the place searched—his off-base home. *See United States v. Salazar*, 44 M.J. 464, 467 (C.A.A.F. 1996). As noted above, however, AFOSI was legally authorized to search Appellant's residence for evidence surrounding his fraudulent scheme as described in the warrant. Given Appellant acknowledges he had no expectation of privacy in the government property actually seized within his home, any government property located in plain view during the search could be secured given AFOSI was properly in the location to be searched. *See Horton v. California*, 496 U.S. 128, 135–36 (1990); *McMahon*, 58 M.J. at 367.

### 3. Search of Appellant's Electronic Devices

Immediately upon his return from leave after his wedding ceremony and honeymoon, Appellant was interviewed by AFOSI investigators on 8 December 2012. At the conclusion of the interview, Appellant consented to the search of a backpack and small travel bag that he had carried with him from the airport. Appellant declined consent to search his personal electronics in these bags, including a cellular phone, tablet, and laptop computer.

Based on Appellant's declination of consent, AFOSI requested verbal search authority from a military magistrate to search for electronic devices found in Appellant's two personal bags. The military magistrate granted verbal authority to search Appellant's electronic devices, which was reduced to writing the following day.

On appeal, Appellant argues this search was defective for a variety of reasons. First, he argues the search was defective as there was no evidence the AFOSI agent's verbal probable cause briefing to the magistrate was made under oath or affirmation. Second, Appellant claims the authorization was invalid as the agent who received the verbal authorization from the military magistrate later changed the items sought to be seized when preparing the written affidavit the next day. Finally, Appellant argues the oral search authority granted in this case under Mil. R. Evid. 315(b) was constitutionally infirm as

there were no procedural safeguards in place to ensure the search was based on probable cause.

Regarding Appellant's first claim that the verbal probable cause affidavit was not made under oath or authorization, we find Appellant forfeited this particular issue by not raising it at trial and thus is not entitled to relief absent plain error.[6] *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013); *United States v. Brown*, 13 M.J. 810, 811 (A.F.C.M.R. 1982). To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011).

We find Appellant is unable to establish plain error on this matter. While Appellant cites to the lack of evidence in the record establishing the agent's verbal probable cause justification was submitted under oath, this absence was the direct result of Appellant's failure to specify this issue at trial. Without evidence to the contrary, we presume the military magistrate, as a trained quasi-judicial officer, understood the procedural requirements surrounding his granting of probable cause in this case. *Cf. United States v. Cron*, 73 M.J. 718, 736 (A.F. Ct. Crim. App. 2014) (noting that judges are presumed to know the law and apply it correctly absent clear evidence otherwise).

Appellant next argues the Government invalidated the verbal search authorization for electronic devices when the AFOSI agent preparing the supporting affidavit after the fact listed the specific electronic devices discovered in Appellant's personal bags. Appellant does not allege the magistrate failed to have a substantial basis to grant probable cause for the search Appellant's electronic devices for evidence of fraud and prescription drug misuse. Instead, he appears to argue the addition of the specific devices in the affidavit supporting the written search authorization shows the initial request for verbal search authorization did not "particularly describe . . . the things to be search." Thus, we will examine whether the request for verbal search authority was overbroad.

Given Appellant's consent to the search of his two personal bags, AFOSI agents were generally aware of the personal electronic devices in Appellant's possession. Notwithstanding this fact, the AFOSI agent who sought verbal authorization to search Appellant's electronic devices could not recall whether he contacted the military magistrate for authorization before AFOSI executed the

---

[6] The Government argues throughout its brief that Appellant's "waive all waivable motions" provision in his pretrial agreement should cause this court to apply waiver to any Fourth Amendment suppression theory not specifically raised at trial. As the Government consented to Appellant's conditional plea, preserving his extremely broad suppression motion, we decline to apply waiver in this case.

consensual search of Appellant's bags. After considering the testimony of the agent, sworn statements, and a video of the consensual search of Appellant's bags, the military judge made the following factual findings:

> After the consent search, [Special Agent (SA) A] sought search authorization from [the] military magistrate . . . over the phone. During the phone call, SA A described the offenses he suspected [Captain (Capt)] Eppes committed, the probable cause he believed existed to search Capt Eppes' electronic devices, and the evidence he believed he would find. SA A requested authorization to search Capt Eppes' bags for the personal electronic devices and to search the personal electronic devices. . . . The military magistrate was satisfied there was probable cause to believe Capt Eppes' personal electronic devices contained evidence of the offenses identified by SA A. The military magistrate verbally granted SA A the authority to search Capt Eppes' personal electronic devices. At approximately 1902 hrs, SA A informed Capt Eppes that he obtained search authorization from the military magistrate and [that] he was authorized to search Capt Eppes' iPad, laptop, and iPhone. . . . Pursuant to the search authorization granted by the military magistrate, agents seized Capt Eppes' MacBook laptop and iPad. Capt Eppes' iPhone data was extracted and the phone was returned to Capt Eppes.

Given the military judge's findings, we examine whether the search for "electronic devices" in Appellant's two bags was constitutionally overbroad. As previously noted, a "warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *George*, 975 F.2d at 75. To be valid, the warrant description need only be "as specific as the circumstances and the nature of the activity under investigation permit." *Henson*, 848 F.2d at 1383 (internal citation omitted).

Considering the military judge's factual findings, we do not believe the request to search for electronic devices in Appellant's two personal bags was constitutionally deficient. An authorization to search media meets constitutional specificity requirements as long as the material described is "related to the information constituting probable cause." *United States v. Allen*, 53 M.J. 402, 408 (C.A.A.F. 2000). We find such a connection here.

Appellant's final argument claims Mil. R. Evid. 315(b) fails to include sufficient procedural safeguards to ensure an oral search authorization is based on probable cause. Although unclear from his brief, it appears Appellant is raising a facial challenge to the constitutionality of the Mil. R. Evid. 315(b), which authorizes the issuance of verbal search authority. Appellant argues the

lack of procedural safeguards, specifically the absence of documentation as to what verbal information was provided to the military magistrate in support of probable cause, violates Appellant's constitutional right to protection from unreasonable searches and seizures. In making such an argument, Appellant acknowledges verbal search authority has been previously countenanced by military courts.

There is a presumption that a rule of evidence is constitutional unless its lack of constitutionality is clearly and unmistakably shown. *United States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000); *see also National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.") (internal quotation marks and citations omitted); *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Thus, in this case, Appellant must show the challenged rule of evidence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43-45 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 201-202 (1977)) (examining historical practices on due process challenges).

Appellant has not "clearly and unmistakably shown" that the issuance of oral search authorization under Mil. R. Evid. 315(b) offends fundamental fairness in such a way to render the rule unconstitutional. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Probable cause exists when there is sufficient information to provide the authorizing official "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Mil. R. Evid. 315(f)(2). As such,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). As we believe the probable cause standard is sufficient to afford Appellant his constitutional protections, we decline to grant relief.

**4. Search of Appellant's Personal Computer**

Appellant next argues the Government's search of his computer seized during the search of his off-base residence on 7 December 2012 was improper because: (1) the warrant issued by the civilian judge only authorized AFOSI agents to "seize" electronic devices; and (2) if the search was authorized, it occurred outside the time period noted in the warrant.[7] Because Appellant did not raise the first theory at trial, he must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Marsh*, 70 M.J. at 104.

As to the first complaint, we find Appellant has not established plain error. The warrant issued by the civilian judge specifically granted AFOSI the authority to search for and seize computer hardware connected to Appellant's fraudulent transactions. Therefore, the search was presumptively reasonable. *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014).

Moreover, based on the facts developed by the military judge, we are satisfied the intent of the warrant was to authorize the examination of computer hardware seized during the 7 December 2012 search. *See United States v. Richards*, No. ACM 38346, 2016 CCA LEXIS 285, at *44 (A.F. Ct. Crim. App. 2 May 2016) (unpub. op.). Appellant was being investigated for creating fraudulent tax documents and travel orders. Evidence of these types of crimes would only be found through an examination of the data contained on the seized hardware. While there were obviously restrictions on the scope of the search given the warrant and accompanying affidavit, the authorization in our opinion did cover the search of computer hardware seized from the residence. Moreover, even if the warrant limited AFOSI ability to examine the contents of the computer hardware, we believe the good faith exception to the exclusionary rule applies. *See United States v. Carter*, 54 M.J. 414, 419–20 (C.A.A.F. 2001).

Appellant next argues the search of the computer hardware took place outside the time window established by the search warrant, which stated in part: "YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime the designated [premise] for the property specified and if the property be found there. YOU ARE COMMANDED TO SEIZE IT." As the initial examination of Appellant's computer hardware took

---

[7] Appellant also argues that all searches after 22 January 2013, the date the Government first analyzed computer hardware seized on 7 December 2012, should be viewed as "fruit of the poisonous tree" and suppressed by this court. Based on our finding below that the search of Appellant's computer hardware was legally authorized, we need not address Appellant's claim that subsequent searches were somehow tainted.

place on 22 January 2013, Appellant claims the 47 days that passed since the initial seizure on 7 December 2012 invalidated the warrant.

In analyzing Appellant's claim, we first note "[t]he Fourth Amendment does not specify that search warrants [must] contain expiration dates . . . [or] requirements about *when* the search or seizure is to occur or the *duration*." *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993). Here, we disagree with Appellant that the language cited above set the duration as to when the Government could analyze the seized computer hardware. *See United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F. 2013) (discussing that courts have considered seizure of electronic materials and later off-site analysis and review of them to be a constitutionally reasonable "necessity of the digital era"). We further find the length of time taken by the Government to examine the computer hardware seized on 7 December 2012 was reasonable. *Id.* at 44 n.6. As such, we decline to grant Appellant relief.[8]

### 5. Search of Appellant's Personal Property

Finally, Appellant argues the Government's search of a personal bag on 5 February 2013 exceeded the scope of the warrant. In so claiming, Appellant acknowledges the affidavit accompanying the search authorization requested authority to search Appellant's personal bags. However, the search authorization signed by the military magistrate only authorized the search of Appellant's person and personal vehicle.

The military judge found the search of Appellant's bag to be "reasonable" given the bag was in the immediate vicinity of Appellant's person, which was authorized on the search authorization. In so holding, the military judge also found Appellant did not have a reasonable expectation of privacy in the government office where the search of his person and personal bag took place.

Although we do not subscribe to the military judge's specific theory of admissibility, we find that the evidence derived from this search was admissible under the good faith exception given the facts of this case.[9]

---

[8] Moreover, even if the duration of the warrant was 10 days, we decline to apply the exclusionary rule as the violation was de minimis or otherwise reasonable under the circumstances. *See United States v. Cote*, 72 M.J. 41, 45 (C.A.A.F. 2013).

[9] The military judge did mention in his findings that government agents conducted the search in "good faith reliance" on the search authorization. As the majority of his analysis focused on the location of the bag in relation to Appellant's person, it is unclear whether the good faith exception was a basis for denial of the suppression motion.

The good faith exception permits the admission of evidence, which although unlawfully obtained, was the result of the good-faith reliance of law enforcement agents on a search authorization. The good faith exception permits the use of evidence obtained from an unlawful search and seizure if:

> (A) the search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;

> (B) the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and

> (C) the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard.

Mil. R. Evid. 311(c)(3).

> [T]he good-faith exception will not apply when part of the information given to the authorizing official is intentionally false or given with "reckless disregard for the truth." It will also not apply where "no reasonably well trained officer should rely on the warrant." . . . Finally, it will not apply when the authorization "may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Lopez*, 35 M.J. at 41–42 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

Here, the only factor in dispute is whether, from an objective viewpoint, the AFOSI agents executing the authorization reasonably and with good faith believed the authorization permitted the search of Appellant's personal bag.

We find a reasonable agent would have believed the authorization allowed the search of Appellant's personal bag as requested in the affidavit accompanying the authorization. *See Carter*, 54 M.J. at 420. The language granting the search of Appellant's person could reasonably be interpreted as also authorizing the search of items of personal property in Appellant's possession when the search was executed. This is especially true in this case where the accompanying affidavit endorsed by the military magistrate specifically requested search authority to examine Appellant's personal bags. For this reason, we decline to grant Appellant relief.

**B. Improvident Plea to Conspiracy to Violate a Lawful General Regulation**

Appellant pleaded guilty to conspiring with another military member to violate a lawful general regulation by possessing an intoxicating substance with an intent to alter mood or function. The general order alleged in the specification was derived from AFI 44-120, *Drug Abuse Testing Program*, ¶ 1.1.6 (1 July 2000), which prohibited the following conduct:

> In order to ensure military readiness; safeguard the health and wellness of the force; and maintain good order and discipline in the service, the knowing use of any intoxicating substance, other than the lawful use of alcohol or tobacco products, that is inhaled, injected, consumed, or introduced into the body in any manner to alter mood or function is prohibited. These substances include, but are not limited to, controlled substance analogues (e.g., designer drugs such as "spice" that are not otherwise controlled substances); inhalants, propellants, solvents, household chemicals, and other substances used for "huffing"; prescription or over-the-counter medications when used in a manner contrary to their intended medical purpose or in excess of the prescribed dosage; and naturally occurring intoxicating substances (e.g., Salvia divinorum). The possession of any intoxicating substance described in this paragraph, if done with the intent to use in a manner that would alter mood or function, is also prohibited. Failure to comply with the prohibitions contained in this paragraph is a violation of Article 92, UCMJ.

Appellant admitted at trial that he entered into an agreement with another military member to have the military member procure Valium and Xanax for Appellant. The agreement called for the co-conspirator to use forged prescriptions created by Appellant to obtain prescription medications while traveling through Africa on special operations aviation missions. The drugs were then mailed to Appellant when the co-conspirator returned to the United States. Appellant advised he took the drugs in an effort to treat the anxiety he was feeling due to stress surrounding his upcoming wedding.

On appeal, Appellant claims his plea to this specification was improvident because any conspiracy to possess controlled substances had to be charged under Article 112a, UCMJ, 10 U.S.C. § 912a, because of either the preemption doctrine or the limitations of the specific language in underlying lawful general regulation. As to the latter claim, Appellant argues the text of the general regulation does not apply to controlled substances such as those sought by Appellant.

We do not agree that the preemption doctrine somehow limits the Government's ability to use an Article 92, UCMJ, 10 U.S.C. § 892, violation as the basis for the conspiracy charge in this case. The preemption doctrine is specifically enumerated in the *Manual for Courts-Martial* (MCM), United States (2016 ed.), Part IV, ¶ 60(c) (5)(a), and "prohibits application of Article 134 to conduct covered by Articles 80 through 132." The "rationale of preemption is that, if Congress has covered a particular kind of misconduct in specific punitive articles of the Uniform Code, it does not intend for such misconduct to be prosecuted under the general provisions of Article 133 or 134." *United States v. Reichenbach*, 29 M.J. 128, 136-37 (C.M.A. 1989); *see also United States v. McGuinness,* 35 M.J. 149, 151–52 (C.M.A. 1992). Thus, while the Government could have charged Appellant with conspiring to violate Article 112a, UCMJ, the preemption doctrine did not require them to do so.[10]

Even if we were to agree with Appellant's general preemption argument, we do not believe Congress intended Article 112a, UCMJ, to occupy the field for all prescription drug offenses. *See United States v. Erickson*, 61 M.J. 230, 233 (C.A.A.F. 2005) (noting there is nothing on the face of Article 112a, UCMJ, or in its legislative history to suggest Congress intended to preclude the armed forces from relying on other UCMJ provisions, including the general article, to punish drug-related offenses not covered by Article 112a, UCMJ); *see also* S. Rep. No. 98-53, at 29 (1983) (Article 112a "is intended to apply solely to offenses within its express terms. It does not preempt prosecution of drug paraphernalia offenses or other drug-related offenses under Article 92, 133, or 134 of the UCMJ."). Here, Appellant was charged with conspiracy to violate a lawful general regulation prohibiting the possession of any intoxicating substance other than alcohol with the intent to use the substance in a manner that would alter mood or function. The fact the substance sought by Appellant was a controlled substance does not remove the Government's ability to charge possession of a substance that Appellant could have lawfully obtained, but still used in an illicit manner.

With the preemption question resolved, we examine the providence of Appellant's plea to the charged offense. We review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In order to prevail on appeal, Appellant

---

[10] Appellant cites dictum from a sister service case, *United States v. Asfeld*, 30 M.J. 917 (A.C.M.R. 1990), as support for his preemption claim. The court in *Asfeld* cited our superior court's opinion in *United States v. Curry*, 28 M.J. 419 (C.M.A. 1989), as authority for its pronouncement on preemption. As we believe the *Curry* holding turns on the doctrine of unreasonable multiplication of charges, *id*. at 424, we do not find our sister court's opinion to be persuasive.

has the burden to demonstrate "a substantial basis in law [or] fact for questioning the guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). The "mere possibility" of a conflict between the accused's plea and statements or other evidence in the record is not a sufficient basis to overturn the trial results. *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (quoting *Prater*, 32 M.J. at 436) (internal quotation marks omitted). A guilty plea will only be considered improvident if testimony or other evidence of record reasonably raises the question of a defense, or includes something patently inconsistent with the plea in some respect. *See United States v. Roane*, 43 M.J. 93, 98–99 (C.A.A.F. 1995).

Having examined the providence inquiry and the stipulation of fact, we find the military judge did not abuse his discretion in accepting Appellant's plea to this offense. Appellant admitted he entered into an agreement with another military member to transfer prescription medications to Appellant even though he did not have a lawful prescription. Appellant confirmed there were steps taken in furtherance of the conspiracy when his co-conspirator shipped the drugs to Appellant. Regarding the offense underlying the conspiracy, Appellant admitted the drugs sought were intoxicating substances as defined in the regulatory guidance, and acknowledged he used the substances to alter his mood or function.

Appellant seems to argue the controlled nature of the substance in this case causes it to fall outside the definition found in the regulatory guidance. We disagree given our plain reading of the term "intoxicating substance." As Appellant admitted he believed the prescription medications in his possession were subject to regulation by the instruction, we see no inconsistencies before the military judge that would have reasonably called into question Appellant's plea.

## C. Improvident Plea to Conduct Unbecoming an Officer

Appellant pleaded guilty to a variety of offenses under Article 133, UCMJ, for his deceitful conduct towards employees of the Dallas hotel where his wedding took place. On appeal, Appellant challenges one of these specifications in which he threatened to prevent the hotel from competing for future government business by "blacklisting" or "classifying" the hotel. On appeal, Appellant claims his plea was improvident because he never admitted to using the term "blacklist" or "blacklisting" and the military judge failed to equate the term "classifying," which Appellant did use, to "blacklisting."

As noted above, we review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *Inabinette*, 66 M.J. at 322.

To sustain Appellant's guilty plea to this offense, a sufficient factual predicate had to establish that: (1) Appellant wrongfully and dishonorably stated

19

to a hotel employee that "I'm going to blacklist you," or words to that effect; and (2) Appellant's conduct, under the circumstances, constituted conduct unbecoming an officer. *MCM,* Part IV, ¶ 59a. (2012 ed.).

Appellant's inability to remember the exact terminology he used to threaten the hotel employee in this case does not render his plea improvident. If an appellant is personally convinced of his guilt based upon an assessment of the government's evidence, his inability to recall the specific facts underlying his offense without assistance does not preclude his guilty plea from being provident. *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011); *United States v. Corralez*, 61 M.J. 737, 741 (A.F. Ct. Crim. App. 2005). In these circumstances, Appellant's reliance on information provided in the stipulation of fact or by his counsel does not raise a substantial basis in law or fact to question the plea. *Id.*

While it is true Appellant never informed the military judge he specifically used the terms "blacklist" or "blacklisting" when dealing with the hotel staff, the providence inquiry establishes Appellant was convinced of his own guilt. *See United States v. Moglia*, 3 M.J. 216, 218 (C.M.A. 1977). As part of his pretrial agreement, Appellant agreed to a stipulation of fact surrounding his offenses. Appellant acknowledged that all of the facts contained in the stipulation were true and uncontradicted. With regard to Appellant's specific challenge on appeal, the stipulation noted Appellant "threatened to 'blacklist' the hotel from the Government Accountability Office (GAO) accommodations book, or words to that effect." The stipulation later documented that Appellant informed a hotel employee that the hotel "was now officially blacklisted, or words to that effect."

When asked about these statements in the stipulation of fact, Appellant informed the military judge, "I can't recall [using those exact words] . . . but it's very possible, like I told you before, under the circumstances it could have happened." Later during the providence inquiry, Appellant advised, "I'm not saying that I did not say those things[;] I just don't accurately recall but the atmosphere was such that I could have." Finally, when asked whether he had any reason to doubt the statements of the hotel employee as documented in the stipulation of fact, Appellant stated, "I have no reason to doubt that he's probably . . . more accurate than I am after, you know, enduring all of this."

Appellant also admitted to the military judge that he sent an e-mail to a hotel staff member, which was attached to the stipulation of fact, advising that he intended to place a "classification" on the hotel that would limit its ability to obtain government business. Appellant advised he sent the e-mail to show he had the "power, ability or knowledge to change a classification or blacklist" the hotel.

Given Appellant's statements above, as well as his pronouncements that he believed he was, in fact, guilty of the offense, Appellant has failed to demonstrate "a substantial basis in law [or] fact for questioning the guilty plea." *Prater*, 32 M.J. at 436.

**D. Failure to State an Offense**

In addition to his direct financial crimes, Appellant was charged with conduct unbecoming an officer for failing to properly report currency transactions as required by 31 U.S.C. § 5324(c). As Appellant noted during the providence inquiry, and as documented in the stipulation of fact, Appellant enlisted the assistance of a friend, who was an Air Force officer stationed in Belgium, to electronically transfer to Appellant approximately $50,000.00 in cash in increments under $10,000.00 to avoid federal reporting requirements. Appellant provided his friend with the currency as Appellant was returning to the United States from a deployment in Africa. Over the course of almost two years, the friend executed numerous non-reported wire transfers to return the cash to Appellant for his personal use. Appellant now claims the charged specification fails to state an offense.

Whether a charge and specification states an offense is a question of law that we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006). "A specification states an offense if it alleges, either expressly or by [necessary] implication, every element of the offense, so as to give the accused notice and protection against double jeopardy." *Id.* (citing *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)); *see also* R.C.M. 307(c)(3). Because Appellant did not request a bill of particulars or move to dismiss the specification for failing to state an offense at trial, we analyze this issue for plain error. *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F.), *cert. denied*, 133 S. Ct. 34 (2012) (mem.).

The elements of the offense alleged in the specification are: (1) that, on divers occasions, Appellant wrongfully and dishonorably engaged in acts of structuring monetary instruments, in violation of 31 U.S.C. § 5324(c), by knowingly failing to file and knowingly causing another to fail to file a report required by federal law; and (2) that, under the circumstances, this conduct was unbecoming an officer.

Appellant concedes all of the elements of the offense are stated either expressly or by necessary implication. Instead, Appellant focuses on the remaining requirements of notice and protection from double jeopardy. Specifically, as a violation of the underlying federal statute can occur by either structuring a financial transaction or failing to report a transaction, Appellant complains he was not on notice as to which theory the Government was proceeding under

21

at trial. Moreover, given these alternative theories, Appellant alleges the specification did not protect him against double jeopardy as the Government could later charge him with a violation of a different theory of liability under this statute.

We need not dwell too long on this question given our review is for plain error. It is clear from Appellant's admissions during the providence inquiry that he was fully aware of the Government's charging theory based on the individual elements of the charge against him. *See United States v. Sell*, 11 C.M.R. 202, 206 (C.M.A. 1953) (notice requirements met when charge sufficiently apprised an accused of what he must be prepared to meet). As such, Appellant has failed to establish he was without fair notice of the offense charged against him.

Likewise, the specification alleges sufficient facts, and the record as a whole provides a sufficient factual basis, for Appellant to raise a claim of double jeopardy if he is later prosecuted for a violation of the same statute under a different theory of culpability. *See Dear*, 40 M.J. at 197 (holding an accused can point to the entire record of trial in raising double-jeopardy protection). For these reasons, we decline to find plain error.

## E. Review of the Convening Authority's Denial of Appellant's Request to Defer Forfeitures

Shortly after the completion of his trial, Appellant, through his military defense counsel, requested the convening authority defer all forfeitures until action, and then waive forfeitures at action for the benefit of Appellant's spouse. Appellant justified his request by stating the loss of his pay and allowances "may" leave his wife without adequate support. The convening authority denied Appellant's request in writing a week later but provided no justification for his denial of Appellant's request.

On appeal, Appellant claims it was error for the convening authority to not provide reasons for his denial of the deferral request. He requests this court grant relief for this error by either disapproving or reducing his fine, or taking other action to reduce the sentence as appropriate.

In response, the Government suggests the convening authority's decision to defer and waive forfeitures is a matter of clemency and, therefore, not subject to judicial review. While we agree with the Government that Appellant's waiver request is not subject to our review, the denial of his deferment request is a matter squarely within this court's purview. *United States v. Key*, 57 M.J. 246, 248 (C.A.A.F. 2002). We review the convening authority's action on a deferral request for an abuse of discretion. R.C.M. 1101(c)(3).

In this case, the convening authority's denial of the request to defer forfeitures failed to identify any reason for the decision. This was error. *United States v. Sloan*, 35 M.J. 4, 6–7 (C.M.A. 1992); R.C.M. 1101(c)(3), Discussion.

However, the convening authority's error does not entitle Appellant to relief unless it materially prejudices his substantial rights. Article 59(a), UCMJ, 10 U.S.C. § 859(a). As previously noted by our sister service court, "[a]bsent credible evidence that a convening authority denied a request to defer punishment for an unlawful or improper reason, an erroneous omission of reasons in a convening authority's denial of a deferment request does not entitle an appellant to relief." *United States v. Zimmer*, 56 M.J. 869, 874 (Army Ct. Crim. App. 2002).

We have no evidence before us that the convening authority's denial was for unlawful or improper reasons. While Appellant attempted to show the negative financial impact of his sentence on his wife's well-being, this fact was obviously balanced against Appellant's significant financial crimes against the United States Government and a commercial insurance company. Without the necessary evidence of prejudice, we find the error in this case to be harmless.

## F. Sentence Appropriateness

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant argues his sentence is inappropriately severe given the significant "legal and factual overlap" between the false statement, fraudulent claim, and larceny offenses. Appellant requests this court grant appropriate relief by significantly reducing his sentence to confinement.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

After giving individualized consideration to this particular Appellant, his record of service, the nature and seriousness of the offenses, and all other matters contained in the record of trial, we find the approved sentence is not inappropriately severe. Appellant's deceitful and dishonorable misconduct was both recurring and expansive. As such, we find, based on the entire record, that the approved sentence for this commissioned officer is not unduly harsh or otherwise inappropriate.

### G. Multiplicity and Unreasonable Multiplication of Charges

Appellant's final assignment of error requests this court declare assorted offenses either multiplicious or an unreasonable multiplication of charges. In requesting relief, Appellant acknowledges his claims have been waived by the "waive all waivable motions" provision in his pretrial agreement. *See United States v. Gladue*, 67 M.J. 311 (C.A.A.F. 2009). Nonetheless, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant asks us to grant appropriate relief.

We hold Appellant has waived this issue on appeal. *Gladue*, 67 M.J. at 314. Moreover, after consideration of the entire record of trial, we decline to exercise our authority under Article 66(c), UCMJ, to grant Appellant relief for this claim of error. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016).

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[11] Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[11] Although not raised by Appellant, we note 126 days elapsed between the conclusion of trial and the convening authority's action, exceeding the 120-day standard established by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We find no evidence Appellant was prejudiced by the delay and, therefore, find that relief under *Moreno* is not warranted. We also decline to grant relief even in the absence of a showing of prejudice. *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).